TAYLOR et al., appellants, *v.* HOLTER et al., respondents.

DEED — *description of property — fork of gulch — parol evidence.* Parol evidence is not admissible to show that the grantors in a deed, in which the property is described as "all the water of the right-hand fork of Oro Fino gulch," intended to convey the water of the left-hand fork of the same gulch.

CASE AFFIRMED. The case of *Donnell* v. *Humphreys*, *ante*, 514, holding that parol evidence may be offered to locate the deed upon land conveyed, affirmed.

DEED — *breach of warranty — measure of damages.* The measure of damages against grantors, who have warranted the title and agreed to defend the same in the deed, is the value of the property at the time the conveyance is made and interest thereon, and the necessary costs, expenses and reasonable counsel fees incurred in defending the title.

DEED — *consideration — damages — gold dust — dollars.* In an action to recover damages for the breach of warranty in a deed, the consideration of which is "two thousand dollars in clean gulch gold dust," only $2,000 in currency can be collected as damages for the value of the consideration.

DEED — *interpretation — consideration — words of bargain and sale.* The words "remised, released and quit-claimed" in a deed, in which the consideration is the full value of the property, and the grantors have warranted the title, are words of bargain and sale, which convey the property described.

TRUSTEE — *liability for personal warranty of title.* The grantors of a warranty deed, who held the title as trustees for a third party, to whom the consideration was paid, are liable on their personal covenants in the deed.

DEED — *acknowledgment.* A deed which is not acknowledged or recorded is good between the parties.

*Appeal from the Third District, Lewis and Clarke County.*

THE court, WADE, J., granted a nonsuit in this case. The facts are stated in the opinion.

E. W. & J. K. TOOLE and CHUMASERO & CHADWICK, for appellants.

Appellants should have been permitted to introduce their testimony to explain and interpret the description in the deed of respondents. Prominent landmarks are controlling points as to description. In this case the monuments are fixed and certain, and the actual possession of the identical property was delivered by respondents. *Nourse* v. *Lloyd*, 1 Penn. 229; *Frost* v. *Spaulding*, 19 Pick. 445; *Moss* v.

*Shear*, 30 Cal. 479 ; *Waterman* v. *Johnson*, 13 Pick. 261 ;
*Owen* v. *Bartholomew*, 9 id. 520 ; *Donnell* v. *Humphreys*,
*ante*, 514 ; *Jackson* v. *Loomis*, 18 Johns. 81 ; *Reamer* v.
*Nesmith*, 34 Cal. 624 ; *Vance* v. *Fore*, 24 id. 446 ; *Irwin* v.
*United States*, 16 How. (U. S.) 522.

The deed of respondents is the same as that of bargain
and sale. The grantors intended to convey the estate with-
out any limitation or reservation. The deed supports the
covenant of warranty attached to it. The warranty would
be without meaning unless the deed is construed as claimed
by appellants. The intention of the grantors must govern.
The deed does not convey any right, title or interest, but
the property itself. 1 Coke on Lit. 60, 266 ; 4 Kent, 458,
460 ; *Russell* v. *Coffin*, 8 Pick. 150 ; *Lynch* v. *Livingston*,
2 Seld. 434 ; *Jackson* v. *Root*, 18 Johns. 78 ; *Morrison* v.
*Wilson*, 30 Cal. 347 ; 2 Pars. on Cont. 184, 185 ; *McNear* v.
*McComber*, 18 Iowa, 12 ; *Williamson* v. *Test*, 24 id. 138.

The measure of damages in this case is the consideration
money paid by appellants with legal interest thereon, the
value of the improvements placed on and in connection
with the property conveyed in carrying out the object of the
grant, the costs of the suit in which appellants were evicted,
and the fees paid appellants' attorneys for defending such
suit. Sedgw. on Dam. 174 ; *Gore* v. *Brazier*, 3 Mass. 542 ;
*Caswell* v. *Wendell*, 4 id. 108 ; *Bigelow* v. *Jones*, id. 513 ;
*Sterling* v. *Peet*, 14 Conn. 254.

When it appears from the deed that the grantor knows
that the grantee is buying land to place valuable improve-
ments thereon, and there is a breach of the covenant of war-
ranty in the deed, the grantee will be entitled to recover the
sum expended in placing such improvements on the land.
*Pitcher* v. *Livingston*, 4 Johns. 6 ; *Dimmick* v. *Lockwood*,
10 Wend. 149 ; *Staats* v. *Ten Eyck*, 3 Cai. 111 ; Sedgw.
on Dam. 174 ; Rawle on Cov. 95–100 ; *Sterling* v. *Peet*,
14 Conn. 254.

Respondents are bound by their personal covenants in
the deed. Their character as trustees does not affect their
liability in this action. Respondents did not disclose their

trust.   Hill on Trust. 790 ; *Greason* v. *Keteltas*, 17 N. Y. 491.

Shober & Lowry and W. F. Sanders, for respondents.

The contract sued on is a release and not a conveyance. It does not convey any thing. It is not acknowledged. Acts 1865, 479, §§ 80–88.   The deed does not furnish the foundation of an action.

The testimony offered by appellants was not competent. Appellants wished to prove that while one water-right was described in their deed, another was conveyed, from which they had been disseized.   The property was described by the laws of nature.

The deed simply abandoned to some one the property. The form of expression in the deed is the lowest that can be used in transferring an estate.

Appellants took by the release the interest of respondents in the property.   The covenant of warranty does not enlarge the estate conveyed, and affects only the interest that is conveyed.    The deed warrants that the estate actually possessed by respondents is completely extinguished.   We have no statute of uses, and the New York decisions, cited by appellants, do not apply to the release in this case. 2 Chitty's Black. 260, "Release ;" *Gee* v. *Moore*, 14 Cal. 472 ; *Kimball* v. *Semple*, 25 id. 452 ; Acts 1865, 487, § 50 ; 3 Washb. on Real Prop. 404 ; 4 Kent, 283 ; Ohio Dig. 310–316 ; *Sweet* v. *Brown*, 12 Metc. 175 ; *Blanchard* v. *Brooks*, 12 Pick. 47 ; *Powers* v. *Ware*, 2 id. 458.

The complaint of appellants does not therefore state facts sufficient to constitute a cause of action.

Appellants seek to vary the terms of the deed by oral testimony, and prove a liability that their pleadings show did not exist.   Such evidence is inadmissible.   No action can be maintained for a failure of title of a fork of a stream that was not actually embraced in the deed.   *Tymason* v. *Bates*, 14 Wend. 672.

Wade, C. J.   This is an appeal from a judgment of nonsuit in the court below.   The suit was brought to recover

damages for breach of warranty in a deed from defendants to plaintiffs, conveying a certain water-right situate in Oro Fino gulch, Lewis and Clarke county.

The deed in question is in the words and figures following, to wit :

"This indenture made the fifth day of December, in the year of our Lord one thousand eight hundred and sixty-eight, between Edward M. Hoyt and A. M. Holter, of Helena, Lewis and Clarke county, Montana Territory, parties of the first part, and Jesse Taylor, Jeremiah Smith and George Cleveland, parties of the second part, witnesseth : That the said parties of the first part, for and in consideration of two thousand dollars, clean gulch gold dust, to them in hand paid by said parties of the second part, the receipt whereof is hereby acknowledged, hath remised, released and quit-claimed unto the said parties of the second part, and to their heirs and assigns, all that certain water-right lying and being in the county of Lewis and Clarke, Montana Territory, and bounded and particularly described as follows, to wit : A certain water privilege the right of which is now vested in us, described as follows : All the water of the right-hand fork of Oro Fino gulch, at and above a point upon said right-hand fork, where the head of a ditch will strike it, which will convey the waters of said right-hand fork of said Oro Fino gulch into a ditch now owned by Taylor, Smith and Cleveland, conveying the waters of the left-hand fork of Oro Fino gulch into Tucker gulch ; said point is supposed to be near some cabins about a quarter of a mile above Unionville. The said water-right hereby conveyed, including the right of the said parties of the second part, at any time they may see proper to carry and convey the said water of the said right-hand fork of said Oro Fino gulch to Tucker gulch, or such other gulch or gulches or mining ground as the said parties of the second part may elect to carry the same, to be by them used or disposed of to their sole use and benefit ; together with all and singular the tenements, hereditaments, and appurtenances thereto belonging or in any wise appertaining ; and the reversion and rever-

sions, remainder and remainders, rents, issues and profits thereof, and also all the estate, right, title, interest we now have in said property, possession, claim and demand whatsoever, as well in law as in equity, of the said parties of the first part, of, in or to the said premises, and every part and parcel thereof with the appurtenances. To have and to hold all and singular the said premises, together with the appurtenances unto the said parties of the second part, their heirs and assigns forever, and we hereby covenant and agree to warrant and defend the title to the same against all claims of all persons whomsoever, whether in law or equity.

In witness whereof the said parties of the first part hath hereunto set their hands and seals the day and year first above written.

EDWARD M. HOYT, [L. S.]

A. M. HOLTER.          [L. S. ]

Signed, sealed and delivered in }
presence of Amos T. Laird.      }

TERRITORY OF MONTANA,      }
*County of Lewis and Clarke,* } *ss. :*

On this 5th day of December, 1868, personally appeared before me, A. B. Babcock, of the aforesaid Territory, Edward M. Hoyt and A. M. Holter, and acknowledged under oath that they and each of them signed and jointly did execute the within instrument, of their own free will.

A. B. BABCOCK,

*Notary Public.*

Upon the trial of the cause to a jury, the plaintiffs, to maintain the issues on their part, offered the foregoing deed in evidence, and the same was received, and read to the jury. It will be seen that this deed is a conveyance of all the waters of the *right-hand fork* of Oro Fino gulch. The plaintiffs then asked the following question of the witness Taylor, one of the grantees in the deed. "What was intended by the term right-hand fork of Oro Fino gulch?" Which question was objected to, and objection sustained. The

plaintiffs then proposed to prove, by competent witnesses, that the plaintiffs became the owners of the right-hand fork of Oro Fino gulch in the year 1866, as were so the owners thereof at the time of the making and execution of the deed from defendants to plaintiffs, on the 5th day of December, 1868; that said plaintiffs at that time were the owners of a ditch conveying the waters of same right-hand fork of Oro Fino gulch into Tucker gulch; that the cabins referred to in said description are situate on the left-hand fork of said gulch, about one-fourth of a mile above Unionville, and that immediately after the execution of the deed from defendants to plaintiffs herein set forth, an agent of defendants, the grantors in said deed, delivered to the plaintiffs, the grantees therein, the waters of the *left*-hand fork of said Oro Fino gulch, and other testimony of like character. To the introduction of which testimony the defendants objected, which objection was sustained; whereupon plaintiffs submitted to a judgment of nonsuit, and appealed to this court.

The object and purpose of this proof was to show that the grantors intended to convey, and the grantees intended to receive by virtue of the deed in question, the waters of the *left-hand fork* of Oro Fino gulch, instead of the waters of the *right*-hand fork, as described in the deed.

This question is presented for solution and decision. Can the words in a deed be altered or changed by extrinsic evidence? In other words, where parties have conveyed all the waters of the *right-hand fork* of a certain gulch or stream, is parol extrinsic proof admissible to show that they intended to convey all the waters of the *left-hand fork* of such stream?

The enunciation of a few general principles, as derived from the books and authorities, may be of use in arriving at a safe and satisfactory answer to the question proposed.

It has long been settled, that where parties have deliberately put their contracts in writing in such terms as import a legal obligation without uncertainty or ambiguity, as to the object, nature and extent of their agreements, it is con-

clusively presumed that the whole of the contract was reduced to writing; and all oral testimony as to what was said before, at the time of, or after it is completed, is rejected because it would tend to substitute an oral for a written contract. This rule is not contradicted or varied by the fact, that extrinsic parol evidence is always admissible to give effect to a written instrument, by applying it to its proper subject-matter, by proving the circumstances under which it was made, thereby enabling the court to put itself in the place of the parties with all the information possessed by them, the better to understand the terms employed in the contract, and to arrive at the intention of the parties.

Instruments are to be interpreted according to their subject-matter, and parol evidence may be resorted to in order to ascertain the nature and qualities of the subject, as a just medium of interpreting the language of the parties, and, also, as a just foundation for giving the instrument an interpretation, when considered relatively, different from that which it would receive if considered in the abstract.

It is necessary to the validity of a grant that the thing granted should be capable of being distinguished from all other things of the kind, but it is not necessary that the description should be such as to identify the object without the aid of extrinsic testimony, and when the description alludes to facts beyond the deed, parol evidence may be offered, not to contradict the description, but to locate the deed upon the land. And this principle was the foundation of the decision in the case of *Donnell* v. *Humphreys*, *ante*, 514.

These rules and principles apply to the interpretation of instruments that are ambiguous and uncertain upon their face, as if I should convey to A my house and lot in Helena, and I was the owner of two houses and lots therein; parol evidence would be admissible to show which of the two houses I intended to convey. But if I conveyed my brick house on Main street, can parol proof be introduced to show that I intended to convey my wooden house on Rodney street?

The description contained in the deed in question is not in any sense ambiguous or uncertain. It is "all the water of the right-hand fork." This is direct, simple and plain. Can we go outside of the deed and create an ambiguity, and then apply the language used to a subject entirely different and directly contradictory to the subject mentioned in the deed?

It is believed that the following is the true rule upon the subject, which rule is gathered from a review of the authorities upon the question, so far as we have been able to read them: The intent of the parties must be gathered from what is written rather than from parol evidence, but the language of the instrument may be construed by the light of surrounding circumstances, and, so far as possible, the court may put itself in the place of the parties, and may interpret the language from this stand-point, *but nothing can be added to or taken from the written words.*

When it is said that courts may put themselves in the place of the parties, and interpret the language used by the light of surrounding circumstances, it is necessary, in the first place, that such language be ambiguous and uncertain; and, in the next place, no interpretation can be given whereby the language can be altered or changed.

If the language is ambiguous it may be shown what is intended, but this intention, when so shown, shall not contradict, change or vary the language used. The language of the instrument shall be applicable to the intention shown by parol.

If this rule is sustained by the authority, then parol proof never could be introduced to show that a grantor intended to convey the "*left-hand fork*" when he did, in fact, convey the "*right*-hand fork."

One of the leading cases referred to by appellants' counsel is that of *Reamer* v. *Nesmith*, 34 Cal. 624. The description contained in the deed in this case was as follows: "All that certain piece of mining ground situate in Comer's Field, on Swindle Hill, south of the road leading from Yankee Jim's to Todds' Valley, known as the Booth claims,

and marked by stakes and corners, four hundred feet front, more or less, *running back into the hill.*"

It will be seen that, although there are many calls in this description, it finally reaches this said claim known as the Booth claims, marked by stakes and corners, and four hundred feet front, more or less, and running back into the hill. And the court say: We are unable to perceive why this description is not applicable to the ground, and sufficiently certain for all purposes of description. But one of the chief questions determined in the case was, whether parol proof was competent to show what was meant by the terms known as the "Booth claims," and "running back into the hill." These terms and phrases are ambiguous and uncertain; and the court very properly say, that it was competent to show the intention of the parties in using these words. But we hold that no intention could be shown that would destroy the words themselves. The words being ambiguous, extrinsic evidence can apply them to their proper subject, and, when so applied, the words must still be applicable to that subject. And, although this is true, yet it would not be true that proof could be introduced to show that the parties, when they said the claim known as "Booth's claim," intended John Smith's claim, or when they said "running back to the hills," they intended to say running forward to the river. The case does not support the proposition that parol extrinsic evidence can be introduced to explain the terms of an unambiguous deed, and to make parties say the "right-hand fork" when they intended the "left-hand fork."

Neither is the proposition supported by the case of *Jackson and McNaughten* v. *Loomis*, 18 Johns. 81, where, in a deed, the premises were described as lot No. 51, in the second division of a patent bounded as follows: Beginning at a stake and stones, etc., giving monuments, courses and distances. It was proved that the grantor at the time of the conveyance owned lot No. 50, in the same patent, and that the monuments, courses and distances exactly correspond with those found on the land, and that, unless this was con-

veyed by the deed it would be inoperative and of no effect.
The court held that the words "lot No. 51" might be
rejected as surplusage, the description of the premises
being sufficiently certain without these words ; that if there
is a contradiction in a description, that part of it is to be
taken which gives most permanence and certainty to the.
location.   This simply decides that where land is described
by monuments, courses and distances, these shall control,
instead of the number of the lot, and that a false number
may be rejected as surplusage.   But suppose we undertook
to reject the words, "right-hand fork of Oro Fino gulch" in
the description under consideration ; it cannot be done with-
out utterly destroying the deed, unless we supply other
words, and no words can be added to or taken from a
description by virtue of extrinsic evidence.   Strike out the
words "right-hand fork," and nothing is conveyed, and the
deed is a nullity.

So in the case of *Irwin* v. *The United States*, 16 How.
522, the description contained in the deed was as follows :
"The right and privilege to use, divert and carry away
from the fountain spring, etc., by which the woolen factory
of grantors is now supplied, so much water as will pass
through a pipe or tube of equal diameter with one that
shall convey the water from the said spring upon the same
level therewith to the factory of said grantors."   The court
held that, under and by virtue of this description, the
grantors were entitled to one-half the waters mentioned,
and this decision is perfectly consistent with the words
used ; and, following the words of the description, no other
decision could have been arrived at.

The view of the law, as herein intimated, is most forcibly
expressed in the case of *Tymason* v. *Bates*, 14 Wend. 672.
In this case the court says : " The deed describes the bound-
aries of the premises conveyed as beginning at the south-
east corner of lot number sixty, in the line of *Lindsay* and
Roseboom's tract.   The existence and location of this line
is not in this case the subject of dispute, but the question
proposed to be evolved is, whether the parties to the deed

meant to refer to what is proved to be the true line, or to
another line which they supposed to be the real line of
Lindsay and Roseboom's tract, but which in fact was not."
And the court proceeded to solve the question by saying
that what the parties intended must be ascertained by what
is expressed in the deed. If, however, their intention is
not expressed in the deed, extrinsic evidence must be
resorted to, to supply that which the instrument does not
supply.

But in the case at bar, the intention is fully and clearly
expressed to convey the waters of the right-hand fork of
Oro Fino gulch, and as in the case of *Tymason* v. *Bates*,
there is no ambiguity in the expression used, nor any thing
in the deed to show that the parties did not mean exactly
what they said.

The case under consideration must be distinguished from
the numerous cases cited in the books where these were
uncertain, contradictory or ambiguous descriptions, wherein
it is decided that if there are certain particulars once suffi-
ciently ascertained which designate the thing intended to
be granted, the addition of a circumstance, false or mistake,
will not frustrate the grant, but may be rejected as surplus-
age, and so if the language used is ambiguous it may be
explained, but when explained it must verify the intention
so proved by extrinsic evidence. The true rule is, *to give
effect to the intention of the parties if the words they em-
ploy will admit of it.* But if the words used, by their
clearness and certainty, absolutely forbid the aid of extrin-
sic evidence in their interpretation, it would be changing the
*certain written contract* of the parties to let in outside parol
proof.

Parties must contract for themselves, courts cannot make
contracts for them, and the rules of interpretation are utterly
unavailing to aid a contract or agreement that is specific and
certain in its terms, and clearly speaks what the parties
intended it should. If parties convey the right-hand fork
of Oro Fino gulch, courts nor witnesses cannot say they
thereby intended the left-hand fork. As well might they

say they intended the left fork of the Missouri river, or the north fork of the Yellowstone, and all the circumstances and surroundings of the parties, however plausible they may appear, cannot blot out the language of the deed and supply other language in its place. Such circumstances and surroundings may aid the language but cannot destroy it. They can apply the deed to its proper subject, and when thus applied, the language must describe such subject, and be entirely consistent with it. The language must control and not the circumstances. The written words must stand and no parol proof can destroy them.

The proposed testimony by virtue of the introduction of which it was offered to be proven that where the parties used the term right-hand fork in the description they in fact intended the left-hand fork, was properly rejected, and the judgment of the court below is affirmed.

And here this decision might properly close, but many questions of grave importance were argued and determined in settling the pleadings in the case, which so vitally affect the rights of the parties herein, that we feel called upon to review those decisions.

And first, the defendants made a motion to strike out certain portions of the complaint, by which motion the question of the measure of damages in a suit for breach of warranty in a deed was presented.

At common law, upon the ancient covenant of warranty, upon voucher or writ of *warrantia chartæ* the demandant recovered of the vendor other lands of equal value with the lands from which the vendee or feofee was evicted, and the value was computed as it existed when the warranty was made, and the warrantor was not held to pay for the increased value of the lands. And when the personal covenants of warranty were introduced, this established measure of compensation was not varied or changed.

In this country upon a covenant of seizin and the right to convey, the rule in all the States seems to be the value of the lands at the time of the conveyance, and interest and costs. I believe this rule usually obtains in the United

States wherever the question has been adjudicated, and I do not understand counsel to dispute this proposition. But upon the covenant of warranty and for quiet enjoyment, there is a conflict of authority, upon the measure of and amount of damages that may be recovered for breach of the covenant. In the covenant of seizin the breach occurs at the time of the conveyance, it is broken as soon as it is made, and this is the reason assigned for the rule, that the measure of damages shall be the value of the land at the time of the breach.

In a covenant of warranty or for quiet enjoyment, for they are the same in their legal consequences, the covenant is not broken until eviction, and the effort has been made in such cases to measure the damages by the value of the lands at the time the covenant is broken, in analogy to the rule in covenants of seizin, and hence the question as to the increased value of the land by the natural rise thereof or by way of improvements.

It is difficult to discover any substantial reason why the rule should not be the same in both classes of covenants. These covenants in either case express the contracts, or the intention of the parties, and where the parties act in good faith, it does not look like exact justice to say that A, who takes possession of lands under a covenant of seizin, and makes valuable improvements thereon, upon being dispossessed by the real owner shall receive as damages only the value of the lands, at the time they were conveyed to him and interest, while B, who takes possession under a covenant of warranty, shall receive the value at the time he is evicted. The reason assigned for the difference is a purely technical one, and is arrived at by saying, that in the case of a covenant of seizin the contract is broken as soon as it is made.

We propose to examine the authorities upon the measure of damages in covenants of warranty and for quiet enjoyment, and to arrive at what departures in the rule, if any, have been made as applied to covenants of seizin.

The question came up in the State of New York in 1805, in the case of *Staats* v. *Ten Eyck*, 3 Cai. 111. The cove-

nants in Ten Eyck's deed were of seizin and for quiet enjoyment, and the question was whether the plaintiff was entitled to recover the value at the time of eviction, or at the time of the purchase and to be ascertained by the consideration given. KENT, C. J., decided that the rule at common law was that the demandant recovered compensation only for the land at the time the warranty was made, and that the law had not been altered since the introduction of personal covenants. LIVINGSTON, J., concurred in this opinion, and without deciding what ought to be the rule where the estate has been improved after purchase, he held that the plaintiff ought to be re-imbursed the costs sustained in the action of ejectment.

In a subsequent case (*Pitcher* v. *Livingston*, 4 Johns. 1), the covenants were of seizin and for quiet enjoyment, and the question was presented whether the plaintiff could recover damages for improvements made by him and the increased value of the land. Upon the question as to the increased value of the land, all the court concurred in the opinion in the case of *Ten Eyck's Executors*, and the majority of the court decided that there could be no recovery for the improvements. SPENCER, J., dissenting therefrom and delivering a dissenting opinion. These decisions have been followed in the State of New York, and in that State the law may be considered settled, and the same rule prevails in the States of Pennsylvania (*Brown* v. *Dickenson*, 12 Penn. St. 280 ; 4 Dall. 444 ; 8 Serg. & Rawle, 166) ; North Carolina (*Phillips* v. *Smith*, 1 N. C. L. R. 475) ; Georgia (*Davis* v. *Smith*, 5 Ga. 285) ; Kentucky (2 Bibb, 279) ; Arkansas (1 Pike, 323) ; Iowa (1 Greene, 28) ; Ohio (14 Ohio, 118) ; Virginia (2 Leigh, 463) ; Tennessee (4 Humph. 101) ; New Jersey (2 Harr. 304) ; and South Carolina (2 Nott & McCord, 189).

The same rule prevails in the supreme court of the United States. *Hopkins* v. *Lee*, 6 Wheat. 118.

Opposed to the rule adopted in these States, and adopting the rule that the measure of damages in the case proposed is the value of the lands with the improvements at

the time of the eviction, are the States of Massachusetts (*Gore* v. *Brazier*, 3 Mass. 523); Connecticut (Kirby's R. 3; 14 Conn. 204); Vermont (12 Vt. 387); and Maine (527).

PARSONS, Ch. J. (in *Gore* v. *Brazier*), said: "When lands were aliened for money, when improvements in agriculture became an important object of public policy, and when the alienor might have no other lands to render a recompense in value, it became expedient that another remedy for the purchaser on eviction should be allowed. And it is certain that, before the emigration of our ancestors, the tenant, on being lawfully ousted by a title paramount, might maintain a personal action of covenant broken on the real covenant of warranty."

Upon this conflict of authority in the different States we are called upon to determine where the true rule is to be found, and it is our opinion that the weight of authority preponderates in favor of the rule that the measure of damages, where no other consideration intervenes, is the value of the lands at the time the covenant is made, and interest and the necessary costs incurred in defending the title.

The rule we have indicated must prevail where there is nothing in the deed to show a different intention. The contract or covenant of warranty must be construed like any other contract by arriving at the intention of the parties, and where there is any thing peculiar in the deed to indicate what the parties intended by their contract, that declared intention ought to prevail over any arbitrary rule of law. If the vendor, at the time of the alienation, knows the particular purpose to which the vendee intends to put the property he ought to be said to make the conveyance with reference to that purpose.

There are intimations running through all the authorities that the contract of warranty must be construed like any other contract by arriving at the intention of the parties, as if A buys of B a city lot for the purpose of erecting a dwelling-house thereon of great value, and this purpose is known to B at the time he makes the covenant of warranty, he ought to be held to contract with reference to this object,

and it would seem that a covenant of warranty of title and quiet enjoyment under such circumstances must be different in its obligation than such a covenant as applied to a piece or parcel of wild land, unoccupied and of little value.

Mr. Sedgwick (Measure of Damages, 164) says: " There seems great doubt whether sufficient attention has been paid to the words of the covenant. What is the meaning of the phrase of 'quiet enjoyment' in regard to a city lot for instance, which is of no use but for buildings, *on which erections must be contemplated at the time of the purchase by both parties*, and of which without such erections no enjoyment can be had. May not a distinction be well taken between this covenant applied to such property and to farming lands?"

It will be observed that this distinction is made by Mr. Sedgwick, where, from the nature of the conveyance and without any words in the deed, the parties must contemplate valuable improvements.

The plaintiffs invoke the distinction made by Mr. Sedgwick, and ask that it be applied to the deed in question. They contend that from the language of the deed itself, aside from the nature of the property conveyed, the vendor knew the purpose of the vendee in securing the conveyance, and knew that he intended to attach valuable improvements thereto, which would be of no value if the title to the property conveyed failed.

From the description in the deed it is true that the vendor knew that the vendee contemplated constructing a ditch whereby the purchase would be made valuable, and the vendor knew that it was necessary to construct a ditch from the right-hand fork to the left-hand fork before this water could be conveyed to Tucker gulch, and he knew that water for Tucker gulch was the object, and he knew that the vendee contemplated making a ditch from the right-hand fork to the left-hand fork, and the vendors fix the point of departure of such ditch. And, if we considered this an open question, we should say that the party having this knowledge must have contracted and entered into his cove-

nant of warranty with reference to this information, and that it formed one of the ingredients of the covenant, and was one of the necessary elements of the contract of warranty. Parties do covenant with reference to the subject-matter of the conveyance and with reference to the object of the conveyance, especially when that object is expressed in the deed. And if we did not feel controlled by the authorities, we should say that the vendor, knowing the purpose of the vendee, and that purpose being expressed in the deed, he entered into the covenant of warranty with reference to that purpose, and that this covenant would hold him to respond for such improvements. As if A should say to B, "if you will build a flouring mill upon this stream worth $10,000 I will warrant you the title to the water and the water right," and the mill should be built upon the strength of such warranty, and the title should fail, A should be held for the value of the improvements.

But we feel controlled and guided by a long course of decisions wherein the value of the land at the time of the conveyance, with interest and costs, is fixed as the measure of damages, and the distinction suggested by Mr. Sedgwick, if made at all, has been disregarded. Some definite, fixed and unalterable rule ought to prevail as to the measure of damages upon breach of warranty of title, and the one fixing the value of the lands at the time of the conveyance, with interest and costs, has been a long time adhered to, and it is now too late to make any departure therefrom.

The consideration in the deed is $2,000 in clean gold dust, and the averment in the complaint is that $2,500 in currency was paid as the consideration, and the plaintiffs ask damages for $2,500 as to this item.

Upon this proposition we say that where a contract is made payable in so many dollars' worth of specific articles of personal property, after demand and refusal to deliver the property, it becomes a contract to pay so much in money, and we hold that only $2,000 in currency could have been collected for the consideration in the deeds, and as a conse-

quence only $2,000 damages could be collected in this action, together with interest and costs.

And as to costs, we hold this : that the vendor not only warranted the title, but he promised to defend it.   For what shall he respond under this promise to defend the title he grants ?   That the taxable costs in the suit to defend the title can be recovered under and by virtue of this covenant, does not seem to admit of much question; and that a reasonable counsel fee, as well as the taxable fee of counsel, can be recovered, was held in the case of *Ten Eyck's Executors*, and this seems to be the rule in Massachusetts, Maine, New Hampshire and Vermont.   And the same reason that would authorize the recovery of the clerk's, sheriff's and other costs would also authorize and permit the recovery of reasonable counsel fees necessarily incurred in defending the title.   The character of these expenses is the same.   One is just as requisite as the other, and both are requisite to a defense, and we hold that both are recoverable for the same reason.

2. The next question relates to the sufficiency of the complaint.   The defendants filed a demurrer thereto upon the ground that the deed in question was but a release ; that the guaranty attached only to the grantors' interest in the property conveyed, and the grantors having no interest in the property at the time of the conveyance, the warranty is therefore void.

An inspection of the deed will show the following : "That the parties of the first part for and in consideration of the sum of $2,000 clean gulch gold dust to them in hand paid by the parties of the second part, the receipt whereof is hereby acknowledged, hath *remised, released,* and *forever quitclaimed* unto the said parties of the second part, and to their heirs and assigns all that certain water-right lying," etc.   Then follows this clause of warranty : "and we hereby covenant and agree to warrant and defend the title to the same against all claims of all persons whomsoever, whether in law or equity."

By the words used in this deed, did the grantors convey

the water-right as upon bargain and sale, or did they simply convey their interest therein, whatever that interest might have been? It is suggested that in the conveyance of a mere possessory title where the party has not the title in fee, as in this case, that the words *remise, release* and *quitclaim* are the proper words to use in making such conveyance, but we wish to strip this question of every peculiar or local consideration, and to determine it upon the bare words used in the conveyance.

This deed must be taken as a whole and construed together, and every part and portion thereof must be made to harmonize with the whole, and effect must be given to every part, if possible, without violating any known rules of construction and interpretation. We must gather the intention of the parties from the whole deed. We cannot single out the words *remise, release* and *quitclaim*, and say therefrom that the grantors simply intended to convey their interest in the property, but these words must be construed in the light of the fact that an ample and full consideration was paid for the property, and that the title thereto was warranted. The warranty and the consideration paid are entirely inconsistent with the theory that the grantors intended simply to release the property, but on the contrary they indicate conclusively that the grantors intended to convey the property itself and the title thereto. And this view of the case is supported by a pure principle of equity, which would forever prohibit a party from receiving a full consideration for property, covenanting to warrant the title and still retaining the consideration, to declare that because he had conveyed *nothing* his covenant of warranty was worthless.

We have no hesitation in saying from this deed, that the grantors intended by it to convey the whole property therein described, and that when they received $2,000 therefor they supposed they were receiving the full price and value of such property, and this intention of the parties must be carried into effect if the words they use do not absolutely prohibit.

It will be noticed that the grantors do not remise, release and quitclaim all their right, title and interest in and to the property, but they remise, release and quitclaim *the thing itself*. There is a marked distinction between remising and releasing one's interest in property, and in remising and releasing the property itself ; in the latter case the words, when supported by a full consideration, would be treated as words of bargain and sale, but in the former case the words would only convey the parties' interest, no matter what the consideration was. As if A should remise, release and quitclaim black acre to B, receiving from B the full value of the property, such conveyance would carry the absolute title, while if A should only remise, release and quitclaim his interest in black acre, B would only acquire such interest, although a full consideration was paid. We believe this distinction is supported by the authorities.

In *Lynch* v. *Livingston*, 2 Seld. 434, the words in the conveyance were "have remised, released, and forever quitclaimed, and by these presents do remise, release and quitclaim unto the said party of the second part," and the court of appeals say, "This was a good and valid bargain and sale. The *pecuniary consideration was adequate to support it as such*, and the words 'remise, release and quitclaim' were sufficient to raise a use in favor of Robert J. Livingston, the bargainee, which use the statute of uses transformed into possession."

In a case reported in the 11 Ill. 484, the court say, in speaking of a quitclaim deed: "Such a deed is just as effectual for the purpose of transferring real estate as a deed of bargain and sale, and had there been no other words in the deed under consideration, showing an intention on the part of the grantor not to convey the land in question, there can be no doubt that the plaintiff would have been entitled to recover."

And so in *Williamson* v. *Test*, 24 Iowa, 138, the court hold : "And notwithstanding the words 'sell, convey and quitclaim,' in the prior part of the instrument, the subsequent language warranting and defending the premises

against the lawful claim of all persons whomsoever, except the United States, would be without meaning, unless construed to hold the grantor, as claimed by plaintiff." See, also, *McNear* v. *McComber*, 18 Iowa, 12 ; *Morrison* v. *Wilson*, 30 Cal. 346 ; 5 Conn. 220.

So we say of the deed we are considering ; the words warranting and defending the title against the claims of all persons whomsoever are without meaning, and were simply intended as a fraud and a deception, unless the words *remise, release* and *quitclaim* are construed as words of bargain and sale, and in giving these words such a construction we only carry into effect the clear and express intention of the parties.

The defendants contend that the words in the deed amount only to a quitclaim of the grantors' interest in the property, and, assuming this to be true, they cite the following authorities to support the proposition that when the deed purports to convey only the grantors' interest in the property, the warranty only attaches to the interest of the grantors, viz.: *Sweet* v. *Brown*, 12 Metc. 175 ; *Kimball* v. *Semple*, 25 Cal. 452 ; *Gee* v. *Moore*, 14 id. 472 ; *Blanchard* v. *Brooks*, 12 Pick. 47 ; *Powers* v. *Ware*, 2 id. 458.

If the assumption of the defendants were correct, then their authorities would be in point ; but it is assuming the whole question to say that the words in the deed amount simply to a conveyance of the grantors' interest in the property, and we are satisfied that these words, in the light of the authorities cited, when supported by a full consideration paid and a warranty, are words of bargain and sale, and that the warranty attaches not to the grantors' interest, but to the property itself.

3. The next question arose upon the third defense set up in the answer. This answer substantially set forth that one Laird was the owner of the property in question, or of an interest therein ; that he conveyed the same to defendants to indemnify them against a liability for him ; that this liability had terminated, and ceased to exist ; that plaintiffs applied to Laird to purchase this property, the title to

which was in defendants, and did purchase the same, paying the entire consideration therefor to Laird; that Laird then applied to the defendants to make to plaintiffs a deed of the property, which they did, and which is the deed in the complaint set forth, and that all these facts, at the time of making such deed by defendants, were known to plaintiffs.

It will be observed by the averments of the answer that the defendants were in fact trustees of Laird, holding the title for him, and it will be seen that one important element, whereby the deed in question was declared to be good and valid as a warranty deed, is wanting in the answer, viz., a consideration. The consideration passed to Laird; these defendants received nothing; they acted as machines in making the conveyance, and if the deed cannot be supported as a deed of bargain and sale without an adequate consideration received *by these defendants*, then it must fail; for as to these defendants, no consideration passed between the parties.

We apprehend that it was entirely immaterial to whom the consideration was paid. The question is, not whether Laird or these defendants received the consideration, but was the value of the property paid for by the plaintiffs? The fact that defendants were trustees for Laird cannot affect their liability. They acknowledge that they received $2,000 for the property and covenant to warrant the title, and if they immediately paid the money to Laird, to whom it belonged, that fact would not enable them to defend against their covenant.

Trustees are never under any obligation to make a personal covenant of warranty, but if they volunteer to do so their liability is precisely the same as if they were acting for themselves, and not as trustees.

Upon this subject Mr. Hill (on Trustees, page 790) says: "It has been already observed that trustees cannot be required to enter into any personal covenants for title in a conveyance of trust estate, beyond the usual covenant that they have not incumbered. But if they should enter into any such

personal covenants, they will be liable in an action at law by the covenantees in case of breach."

In *Greason* v. *Keteltas*, 17 N. Y. 491, the court of appeals holds as follows: "Although parties who act in respect to the property in their hands in the capacity of trustees only are not ordinarily under any obligation, in executing the duties of their trust, to enter into any personal covenants in relation to the trust property, yet when they voluntarily do so they are not only themselves bound to perform such covenants, but those who succeed to their rights as trustees are also bound, so long as they retain the control of the property to which they relate. See, also, *Sumner* v. *Williams*, 8 Mass. 162.

The facts set out in the third defense of the answer are not sufficient to constitute a legal defense to said action.

4. The final question relates to the acknowledgment of the deed. The acknowledgment is not in the form prescribed by the statute, and the defendants contend that this irregularity vitiates the deed as between the parties to the instrument.

Our statute provides (section 3, p 396): "Every conveyance in writing, whereby any real estate is conveyed or may be affected, shall be acknowledged or proved in the manner hereinafter provided." Section 6 provides: "No acknowledgment of any conveyance whereby any real estate is conveyed or may be affected shall be taken unless the person offering to make such acknowledgment shall be personally known to the officer taking the same to be the person whose name is subscribed to such conveyance as a party thereto, or shall be proved to be such by oath or affirmation of a creditable witness."

It is admitted that the acknowledgment to the deed in question does not answer the requirements of the statute. Does such failure in the acknowledgment vitiate the deed as between the parties thereto?

The object of an acknowledgment, and the record of a deed affecting real estate relates to the rights of third persons.

It is submitted that a deed as between the parties to the instrument is good and valid when signed, sealed and delivered, and the purpose of acknowledgment and record is for the protection of third persons. As between the parties a deed can be enforced without acknowledgment and without record. The acknowledgment is no part of the deed.

In the case of *Wood* v. *Owings*, 1 Cranch, 239, the supreme court of the United States holds, in considering a case under the Maryland statutes, which upon the subject of acknowledgment of deeds are similar to ours:

"It is a well-established doctrine of the common law that a deed becomes complete when sealed and delivered. It then becomes the act of the person who has executed it, and whatever its operation may be, it is his deed. The very act of living, which puts the paper into the possession of the party for whose benefit it is made, seems to require the construction that it has become his deed. Upon the most mature consideration of the subject, the opinion of the court is, that the words used in the act of Maryland, which have been recited, consider the instrument as a deed although inoperative till acknowledged and enrolled."

Following this decision we hold that the defect in this acknowledgment does not destroy the deed as between the parties thereto, and that as between such parties the deed would be good even without acknowledgment or record.

The questions we have considered in this opinion may be reduced to the following as a statement of the conclusions arrived at:

1. The intent of the parties must be gathered from what is written rather than from parol evidence, but the language of the instrument may be construed by the light of surrounding circumstances, and so far as possible the court may put itself in the place of the parties, and may interpret the language from this stand-point, but nothing can be added to or taken from the written words. Therefore no interpretation could be given to a deed whereby the words "Right-hand fork of Oro Fino gulch" in the descrip-

tion could be made to read "Left-hand fork of Oro Fino gulch." Extrinsic parol evidence can only explain ambiguous and uncertain words and phrases. Words direct, simple and certain cannot be explained by parol.

2. The measure of damages for breach of warranty in a deed is the value of the property at the time of the conveyance, together with interest thereon, and the necessary costs and expenses incurred in defending the title, and such costs and expenses include a reasonable counsel fee.

3. The words *remise, release* and *quitclaim,* when supported by an adequate consideration and warranty of title, thereby showing the intention of the parties to have been to convey the property itself, and not the grantors' interest therein, are words of bargain and sale, and operate to convey the property described.

4. The grantors being trustees and holding the title for the benefit of third persons, and the consideration having passed to such third persons, does not affect their liability. They are liable on their personal covenants, notwithstanding their character as trustees.

5. The acknowledgment to a deed is no part of the deed, and as between the parties to the instrument a deed is good without acknowledgment, the acknowledgment and record being required for the protection and benefit of third persons.

The judgment of the court below is affirmed.

*Judgment affirmed.*