JUSTICE COTTER
concurs and dissents.
¶33 I dissent from the Court’s resolution of Issue One and concur with the Court’s resolution of Issue Two.
¶34 The Court goes to tortuous lengths to rationalize its conclusion that the parties did not truly intend for Dennis’s “child support” obligations to actually be “child support” obligations. In so doing, the Court ignores both the provisions of the contracts negotiated between the parties and settled law.
¶35 The Plan, negotiated in 2006, unequivocally provided for Dennis to pay Larissa monthly child support payments in the sum of $10,000, as calculated in accordance with § 40-4-204, MCA, and the Montana Child Support Guidelines. The obligation was to continue until terminated by emancipation of each child, but in no event later than each child’s nineteenth birthday. The parties prepared Montana Child Support Guidelines Worksheets A and B, and attached these worksheets to the Plan that was submitted to the District Court for approval. The worksheets reflected the incomes of both parties and the parenting arrangements in effect at the time. According to the Plan, *327 the eldest and youngest child would reside primarily with Dennis and the middle child would reside primarily with Larissa. The worksheets reflected that each child would be residing essentially equally with both parents. Subsequently, on November 3, 2006, the District Court entered a Decree of Dissolution, obligating Dennis to pay $10,000 per month for child support, for the care of the children.
¶36 In sum, the Plan, the Stipulation, and the Decree all provided for the payment of child support until the children were emancipated. Nowhere in the documents did the parties or the court say or even infer that the child support obligation was actually intended as a form of property settlement. In order for the Court to reach this conclusion, it disregards the plain language of both the parties’ agreements and the District Court’s Decree of Dissolution, and rewrites all three documents.
¶37 In defense of its decision, the Court attaches significance to the fact that by the time the parties entered the 2009 Stipulation, none of the children resided with Larissa. Opinion, ¶ 23. However, as indicated above, only one of the children resided primarily with Larissa when the parties agreed to the child support calculation in the 2006 Plan. Further, Larissa freely conceded in her testimony that the parties intended to comply with the Child Support Guidelines, and that they intended an open residential schedule with the children. These circumstances underscore the intent of the parties to have Dennis support the children regardless of where they lived. The Court ignores these factors in its haste to declare contractual child support obligations-which are incorporated into a District Court Decree-to be something else altogether.
¶38 In In re Marriage of Craib, 266 Mont. 483, 880 P.2d 1379 (1994), the parties were before the Court on cross-motions seeking to modify provisions of a decree of dissolution. Kenneth sought to introduce certain information regarding income tax responsibility, arguing to the Court that since the parties’ agreement incorporated into the decree was silent on the point of tax payments, the Court must now determine who is responsible for the payment. Craib, 266 Mont. at 498-99, 880 P.2d at 1389. The district court denied admission of any evidence pertaining to the circumstances at the time of the dissolution, concluding that the parties’ agreement “speaks for itself.” Craib, 266 Mont. at 499, 880 P.2d at 1389. We affirmed this ruling, stating:
We conclude the District Court properly refused to admit evidence in this proceeding about the circumstances at the time of the dissolution. We further conclude that the court’s statement that *328 the agreement speaks for itself is a determination that the evidence sought to be admitted was not relevant to this proceeding.
Craib, 266 Mont. at 499, 880 P.2d at 1389.
¶39 This Court has a long history of interpreting contracts to allow the document to speak for itself:
The true rule is, to give effect to the intention of the parties if the words they employ will admit of it. But if the words used, by their clearness and certainty, absolutely forbid the aid of extrinsic evidence in their interpretation, it would be changing the certain written contract of the parties to let in outside parol proof. Parties must contract for themselves, courts cannot make contracts for them, and the rules of interpretation are utterly unavailing to aid a contract or agreement that is specific and certain in its terms, and clearly speaks what the parties intended it should.... The language must control and not the circumstances. The written words must stand and no parol proof can destroy them.
Taylor v. Holter, 1 Mont. 688, 698-99 (1872) (emphasis in original). The majority’s decision represents a striking departure from these longstanding rules. The words “child support” are clear and unequivocal in their meaning, yet the Court ignores the language of the parties’ agreements and the District Court’s Decree, and substitutes its own contradictory interpretation.
¶40 An agreement speaks for itself. Absent a mistake or imperfection of the writing that is put in issue by the pleadings, or a contention that the agreement itself is invalid-neither of which is alleged here-there can be no evidence of the terms of the agreement other than the contents of the writing. Section 28-2-905(1), MCA. When the language of a contract is clear, “there is nothing for the courts to interpret or construe and the court must determine the intent of the parties from the wording of the contract alone.” Mary J. Baker Revocable Trust v. Cenex Harvest States, Coops., Inc., 2007 MT 159, ¶ 55, 338 Mont. 41, 164 P.3d 851 (quoting Doble v. Bernhard, 1998 MT 124, ¶ 19, 289 Mont. 80, 959 P.2d 488); see also § 28-3-401, MCA (“The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity.”). Therefore, “the duty of the court is to apply the language as written.” Doble, ¶ 19.1 disagree strongly with the Court’s determination to jettison these statutory mandates in the interests of reaching a desired result.
*329 ¶41 On November 17, 2010, Dennis filed a Motion to Modify Child Support pursuant to § 40-4-208, MCA. He argued that the financial impact of the fire at the hot springs, when combined with the economic downturn, rendered him unable to pay child support as required under the Decree and Stipulation. He also argued that two of the children were emancipated. Instead of addressing the merits of these claimed changes in circumstance under § 40-4-208, MCA, the District Court determined that the parties intended the monthly payments to be for the benefit of Larissa and not the children. We perpetuate this clear error.
¶42 I would reverse and remand for consideration of Dennis’s Motion to Modify Child Support under § 40-4-208, MCA. On remand, the court would consider the totality of the previous and present circumstances pursuant to §§ 40-4-204(2) and -208(2)(b), MCA, in determining whether a substantial change in circumstances has actually occurred. Having done so, the court could find justification for Dennis’s motion, or reject it as unsupported by the facts. The point is that a child support order should be reviewed for modification under the child support statutes, keeping in mind the best interests of the children. It is important to perpetuate the distinction between child support on the one hand, and property settlement and maintenance on the other. I fear that our decision today gives tacit approval to a blurring of these wholly separate obligations.
¶43 I therefore concur and dissent.