No. 92-054

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

IN RE THE MARRIAGE OF
RICHARD DALE ISAAK,

        Petitioner and Appellant,

-v-

JUDY L. FUNK SMITH, Personal Representative
of the Estate of LYNN M. ISAAK,

        Respondent and Respondent.



FILED

MAR -4 1993

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        John L. Hollow, Attorney at Law, Helena, Montana

        For Respondent:

        Robert T. Cummins and James P. Greenan, Attorneys at
Law, Helena, Montana

        Submitted on Briefs:  August 20, 1992

        Decided:  March 4, 1993

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Petitioner, Richard Dale Isaak (Dale), appeals the Findings of Fact, Conclusions of Law and Order of the First Judicial District Court, Lewis and Clark County, Montana, which distributed Dale's inherited real property to Lynn M. Isaak (Lynn), required Dale to provide health insurance coverage for the minor child although Dale is unemployed, and ordered Dale to pay Lynn's attorney fees. Respondent, Judy L. Funk Smith, personal representative for the estate of Lynn M. Isaak, cross-appeals claiming that the District Court incorrectly calculated the net assets of the marital estate. We reverse in part and affirm in part.

The restated issues are as follows:

1. Did the District Court correctly calculate the net assets of the marital estate?

2. May the trial court require a person to provide health insurance coverage for a child when the coverage is not available through an employer, and partially or entirely paid by the employer?

3. Did the District Court err procedurally by allowing Lynn to collect attorney fees from Dale?

Dale and Lynn were married on October 21, 1979 in Helena, Montana. One child was born during their marriage. Dale also adopted two children born to Lynn prior to their marriage. At the time of the trial, Dale was 38 years of age and Lynn was 35 years of age. During their marriage, Dale and Lynn lived rent-free in houses provided by Dale's father, Reinhold Isaak. In 1987,

2

Reinhold Isaak built a new home on a 21-acre parcel at 5920 Highway 12 West for Lynn and Dale. The District Court found that Reinhold Isaak intended to provide a home for Lynn and Dale and included this property, valued at $115,500.00, in the marital estate, and subsequently distributed it to Lynn. Other than this real property, the marital estate consists of personal property valued at $7,060.00. Dale received personal property valued at $2,310.00; Lynn received personal property worth $4,750.00.

Dale is the only child of Reinhold and Josephine Isaak. Josephine Isaak predeceased Reinhold Isaak, who died in January of 1990, devising all of his real and personal property to Dale by a will dated January 4, 1986. The 21-acre parcel of real property with the new home built for Dale and Lynn (distributed to Lynn as marital property) was still in Reinhold Isaak's name at the time of his death. This property is part of the Reinhold Isaak estate which is valued at $578,000.00. This estate includes other real and personal property, including income-producing real estate contracts. Despite the fact that Reinhold Isaak died while Dale and Lynn were married, the District Court did not include the bulk of Dale's inheritance in the marital estate, finding that:

> Except as herein modified, this Court is of the view that the marital estate does not include the estate that Dale has inherited from Reinhold Isaak. Not only did the inheritance occur after the parties had separated, but the parties had clearly done nothing to improve, maintain, or build that estate.

In addition to the 21-acre parcel of real property and the personal property valued at $4,750.00, the District Court's order provided Lynn with $500.00 per month maintenance and $285.00 per

3

month child support for Kristian, the parties' minor child. It also required Dale to provide medical insurance for Kristian. The District Court found that Dale, although unemployed, is capable of earning at least $1,000.00 per month. Dale also can receive over $1,200.00 per month from his father's estate. Many of Dale's monthly expenses are paid by the estate. Although the probate has not been closed, the attorney for the estate testified that there is no reason not to do so. When this is done, Dale may be able to eliminate some estate-related monthly expenses such as the attorney and accountant, thereby increasing his monthly income. The gross monthly income from real estate contracts is approximately $3,000.00.

The District Court further found that Lynn was unable to work. Lynn suffered from breast cancer which had metastasized. At the trial (May 15 and June 4, 1991), Lynn testified that she had no more than three years to live. Lynn died one year later on June 9, 1992. Her interest is represented in this appeal by the personal representative of her estate, Judy L. Funk Smith, who has cross-appealed, claiming that the entire Reinhold Isaak estate should have been included in the marital estate.

## I.

Did the District Court correctly calculate the net assets of the marital estate?

The District Court found that it was not appropriate to include in the marital estate property devised to Dale by his father's will. His father died after the parties had separated,

4

although it appears from the record that Dale and Lynn made attempts to reconcile up to and after the date of Reinhold Isaak's death. The testimony indicates that Reinhold Isaak built a home for Dale and Lynn in 1987. The District Court found that he intended to provide this as a home for Dale and Lynn. The home is located on a 21-acre parcel of land which was still in Reinhold Isaak's name at the time of his death in January 1990.

Dale contends that a mere intention to make a future gift of real property does not meet the requirements for an inter vivos gift of real property. He argues that there was no completed gift because title had not passed to either of the parties. Dale, therefore, contends that the District Court incorrectly included this property in the marital estate because to do so requires a finding of a gift of real property.

We review a lower court's conclusion of law by determining whether it correctly or incorrectly applied the law. In re the Marriage of Hamilton (Mont. 1992), ___ P.2d ___, 49 St.Rep. 604, 606. Section 70-20-101, MCA, governs transfers of real property. It provides:

> **Transfer to be in writing--statute of frauds.** No estate or interest in real property, other than an estate at will or for a term not exceeding 1 year can be created, granted, assigned, surrendered, or declared otherwise than by operation of law or a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring it or by his lawful agent thereunto authorized by writing.

Section 70-20-101, MCA.

Reinhold Isaak executed no written document to effect a transfer of the property to Dale and Lynn. The general rule is

5

that a parol gift of land is invalid and does not pass title to the donee, even where the gift is accompanied by a transfer of possession, unless the donee, after taking possession, makes permanent and valuable improvements or other factors exist that would make it a fraud upon the donee not to enforce the transfer. 38 C.J.S. Gifts § 57 (1943). Section 70-20-102, MCA, provides exceptions to this statute:

**Exceptions to statute of frauds.** Section 70-20-101 must not be construed to:
(1) affect the power of a testator in the disposition of his real property by a last will and testament;
(2) prevent any trust from arising or being extinguished by implication or operation of law; or
(3) abridge the power of any court to compel the specific performance of an agreement, in case of part performance thereof.

There are no circumstances present here which would constitute an exception to the statute of frauds under § 70-20-102, MCA. Without a writing signed by Reinhold Isaak to effect an inter vivos transfer to Dale and Lynn, the property must pass under the 1986 will executed by Reinhold Isaak.

Although we have concluded that this real property could not be part of the marital estate based on an inter vivos transfer from Reinhold Isaak, the District Court did not err by including it in the marital estate. Montana law provides:

**Division of property.** (1) In a proceeding for dissolution of marriage, . . .the court, without regard to marital misconduct, shall . . . finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both. . . . In dividing property acquired prior to the marriage; property acquired by gift, bequest, devise, or descent; . . . the court shall consider those contributions of the other spouse to the marriage, including:

6

(a) the nonmonetary contribution of a homemaker;
(b) the extent to which such contributions have facilitated the maintenance of this property; and
(c) whether or not the property division serves as an alternative to maintenance arrangements.

Section 40-4-202, MCA.

The District Court found that the marital assets included $7,060.00 in personal property and the 21-acre parcel of real property with the new home built upon it. It did not include the other assets inherited by Dale. Clearly, under § 40-4-202, MCA, Dale's inheritance can be part of the marital estate.

Reinhold Isaak died in January of 1990. The record indicates that, although Dale and Lynn had separated in 1989, they attempted to reconcile in late 1989 and early 1990, with Dale moving back into the home and the parties seeking some marital counseling. It was not until after Reinhold Isaak's death that they separated permanently.

Dale's interest in all of his father's property vested at the time of Reinhold Isaak's death. Section 72-3-101(2), MCA, provides: "Upon the death of a person, his real and personal property devolves to the persons to whom it is devised by his last will . . . ." Section 72-3-606, MCA, allows the personal representative to take real or personal property if necessary for purposes of estate administration. We conclude that the real and personal property of Reinhold Isaak became vested in Dale upon Reinhold Isaak's death in January 1990, subject only to the personal representative's power to appropriate the assets, if necessary, for purposes of administration. The record does not

7

contain any indication that this was or will be necessary.

Dale's petition to dissolve the marriage is dated August 30, 1990, over seven months after his father died. Dale inherited property valued at $578,000.00 from Reinhold Isaak before the petition was filed. An inheritance received during the marriage is a marital asset. Vivian v. Vivian (1978),178 Mont. 341, 344, 583 P.2d 1072, 1074. From the facts of this case, this inheritance should properly be considered for inclusion in the marital estate according to § 40-4-202, MCA. Section 40-4-202, MCA, is a flexible statute vesting wide discretion in the district court. In re the Marriage of Stewart (1988), 232 Mont. 40, 757 P.2d 765. An inherited asset is to be treated on a case by case basis when marital property is distributed. Stewart, 757 P.2d at 768. See also In re the Marriage of Dirnberger (1989), 237 Mont. 398, 402, 773 P.2d 330 (no definite rule can be established for considering inherited assets; each case must be decided on its own facts). We conclude that the District Court should have included Dale's inheritance in the marital estate.

The dissent emphasizes the finding of the District Court that there is no evidence that either party contributed to or maintained any of the inherited estate. Based on that finding and a number of Montana cases, the dissent concludes that the marital estate should not include the inherited estate or property because the inheritance occurred after the separation of the parties, and because the parties had done nothing to improve, maintain, or build that estate. We do not believe that conclusion is appropriate

8

under the facts of this case.

For the assistance of the District Court on remand, we emphasize it must be guided by the provisions of § 40-4-202, MCA. The requirement of the court is that it "finally, equitably apportion" the marital estate, and this extends to inherited property as well as other property. The statute requires the court to consider such items as duration of marriage, health, occupation, amount of income, and needs of the parties. The general provisions of subparagraph (1) also require that the court consider the relationship of apportionment to maintenance and the opportunity of each for future acquisitions of capital assets and income. As above quoted, the statute also provides that in dividing property acquired by devise or descent, the court shall consider the contributions of the other spouse to the marriage including:

> (a) the nonmonetary contributions of a homemaker;
> (b) the extent to which such contributions have facilitated the maintenance of the property; and
> (c) whether or not the property division serves as an alternative to maintenance arrangements.

Section 40-4-202(1), MCA. We emphasize that the District Court should consider all appropriate provisions of § 40-4-202, MCA.

On remand, the District Court may also be assisted by In re the Marriage of Alt (1985), 218 Mont. 327, 708 P.2d 258, a case similar to this one in terms of the inheritance vesting after the parties separated, in which this Court approved the district court's treatment of inherited property included in the marital estate. In Alt, the court awarded the husband's inherited real property to him, with the proviso that if the property was sold

9

before the child's majority, one-third of the sale proceeds were to be put in trust for the education and general welfare of the minor child. The trust was to include conditions for distribution of the remainder of the trust to the child upon attaining majority. Alt, 708 P.2d at 262.

We hold the District Court did not correctly calculate the marital estate. We vacate the property distribution and remand to the District Court for recalculation of the marital estate in a manner consistent with § 40-4-202, MCA, and this opinion.

## II.

May the trial court require a parent to provide health insurance coverage for a child when the coverage is not available through the parent's employer, and partially or entirely paid by the employer?

Dale contends that, because he is unemployed, the District Court had no authority to order that Dale provide health insurance coverage for Kristian. In support of this argument, Dale cites § 40-4-204(4)(a), MCA, which provides:

> (4) Each district court judgment, decree, or order establishing a final child support obligation under this title and each modification of a final order for child support must include a provision addressing health insurance coverage in the following cases:
> (a) If either party has available through an employer or other organization health insurance coverage for the child or children for which the premium is partially or entirely paid by the employer or organization, the judgment, decree, or order may contain a provision requiring that coverage for the child or children be continued or obtained.

Dale's reliance on § 40-4-204(4)(a), MCA, is misguided. That section is inapplicable in a situation such as the present one

10

where there is no medical insurance plan provided by an employer. It merely requires the district court to include a provision relating to health insurance when there is such a plan. However, §§ 40-4-204(1) and (2), MCA, require the district court to order either or both parents owing a duty of support to a child to pay an amount reasonable or necessary for the child's support and to consider all relevant factors. Among other things, the district court must consider the "physical and emotional condition of the child and his educational and medical needs." § 40-4-204(2)(d), MCA. The District Court complied with Montana's child support statute and required Dale to provide medical insurance as part of his support obligation.

We hold that the District Court can require a parent to provide health insurance coverage for a child, although such coverage is not available or paid for partially or totally by the employer.

### III.

Did the District Court err procedurally by allowing Lynn to collect attorney fees from Dale?

Dale contends that Lynn did not file a motion to amend the judgment under Rule 59(g), M.R.Civ.P., and that her Affidavit in Support of Attorney Fees filed on January 16, 1992 was neither timely nor in proper form. Dale relies on Cook v. Harrington (1983), 203 Mont. 479, 661 P.2d 1287, to support his contention that the correct procedure requires a Rule 59(g) motion to amend the judgment when a Notice of Entry of Judgment has been filed, as

11

happened here. Ms. Smith, the personal representative for Lynn's estate, contends that Rule 59(g) is not applicable in this situation. We agree with Ms. Smith.

Section 40-4-110, MCA, gives district courts the authority to order one party in a dissolution proceeding to pay a reasonable amount for costs and attorney's fees to maintain or defend the action and for costs and fees incurred before the commencement of the proceedings or after entry of judgment. The District Court could properly order that Lynn's costs and attorney's fees be paid by Dale as part of the decree.

Rule 59(g), M.R.Civ.P., applies to petitions for costs and attorney fees filed after entry of judgment. In re the Marriage of McDonald (1979), 183 Mont. 312, 314, 599 P.2d 356, 358, citing Stacy v. Williams (1970), 50 F.R.D. 52 (construing Rule 59(e), Fed.R.Civ.P., which is identical in content to Rule 59(g), M.R.Civ.P.); Lichtenstein v. Lichtenstein (1972), 55 F.R.D. 535 (construing Rule 59(e), Fed.R.Civ.P.); see also M & R Construction v. Shea (1979), 180 Mont. 77, 589 P.2d 138 (this Court applied Rule 59(g) to a motion to strike judgment for attorney fees). A Rule 59(g) motion to amend the judgment must be timely filed when the judgment does not contain a provision addressing attorney fees. McDonald, 599 P.2d at 358. Cook involved a case where attorney fees were sought after judgment was entered. It is not relevant to the circumstances of this case.

We hold that the District Court did not err procedurally when it allowed Lynn to collect attorney's fees from Dale.

12

We reverse in part and affirm in part, vacating the property distribution ordered by the District Court with instructions for the District Court on remand to redetermine the marital estate and equitably distribute it in a manner consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

13

Justice Terry N. Trieweiler concurring in part and dissenting in part.

I concur with the majority's disposition of Issue II concerning health insurance, and Issue III concerning attorney fees.

I dissent from the majority's opinion regarding Issue I. I would reverse the District Court's judgment which awarded real property owned by the estate of Reinhold Isaak to Lynn and conclude that there was no basis for awarding any real estate to Lynn under the facts of this case.

The majority concludes that although there was no inter vivos transfer of the property which was awarded to Lynn, Dale inherited the property at the time of his father's death, even though the property was still part of his father's estate at the time the dissolution judgment was entered. Assuming that part of the majority opinion was correct, there was still no basis for awarding to Lynn any real property inherited by Dale.

Section 40-4-202(1), MCA, sets forth the factors which must be considered by the District Court before inherited property can be distributed to the noninheriting spouse. That section provides in relevant part that:

> In dividing property . . . acquired by gift, bequest, devise, or descent . . . the court shall consider those contributions of the other spouse to the marriage, including:
>
> (a) the nonmonetary contribution of a homemaker;
>
> (b) the extent to which such contributions have facilitated the maintenance of this property; and

14

(c) whether or not the property division serves as an alternative to maintenance arrangements.

In the case of *In re Marriage of Herron* (1980), 186 Mont. 396, 608 P.2d 97, the district court divided marital property on a fifty-fifty basis, even though the majority of the property had either been given or devised to Mrs. Herron by her father. However, this Court found that gifted or devised property was governed by the section previously quoted, and based upon that statute, concluded:

> If none of the value of the property is a product of contribution from the marital effort, the district court can justifiably find that the non-acquiring spouse has no interest in the property.
>
> . . . .
>
> . . . Both parties here should share equally in the portion of the value of the gift property attributable to contribution from the marriage and appreciation during marriage. The Herrons should not, however, share equally in the total value of the property since the marital assets came to the marriage principally as gifts for Mrs. Herron's benefit.

*Herron*, 608 P.2d at 101-02.

In accord are *In re Marriage of Barnard* (1990), 241 Mont. 147, 785 P.2d 1387; *In re Marriage of McFarland* (1989), 240 Mont. 209, 783 P.2d 409; *In re Marriage of Fitzmorris* (1987), 229 Mont. 96, 745 P.2d 353; *In re Marriage of Becker* (1985), 218 Mont. 229, 707 P.2d 526.

In this case, the parties separated in November 1989, several months before Reinhold Isaak died. Whether or not they made occasional efforts to reconcile following Reinhold's death, but before the dissolution decree was entered, there is no evidence

15

that during that time any substantial contribution was made by the parties to the value or maintenance of the property. In fact, although not discussed by the majority, the District Court specifically found the following facts to be true:

> There is no evidence in the record that would indicate to this court that either party in any way contributed to or maintained any of the inherited estate.

> Except as herein modified, this court is of the view that the marital estate does not include the estate that Dale has inherited from Reinhold Isaak. Not only did the inheritance occur after the parties had separated, but the parties had clearly done nothing to improve, maintain, or build that estate.

Neither can distribution of this property be considered an alternative to maintenance arrangements since Dale was already ordered to pay $500 a month to Lynn for her maintenance.

Since Dale had not inherited the property during the time that the parties lived together, there could have been no contributions to the value or maintenance of the property during the parties' marriage. Therefore, there was no basis, pursuant to our previous decisions interpreting § 40-4-202(1), MCA, for distributing any part of the real estate inheritance to Lynn.

For these reasons, I dissent from the opinion of the majority. I would reverse that part of the District Court judgment which awarded property from Reinhold Isaak's estate to Lynn, and otherwise, affirm the District Court.

_____
Justice

16

March 4, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


ROBERT T. CUMMINS
Attorney at Law
One North Last Chance Gulch
Helena, MT  59601

John L. Hollow
Attorney at Law
44 West Sixth Avenue
Helena, MT 59601

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy