NO. 93-045

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN RE MARRIAGE OF

MARCIA R. KIMM,

Petitioner and Respondent/
Cross-Appellant,

and

CLARENCE J. KIMM, SR.,

Respondent and Appellant.

FILED

OCT 05 1993

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                In and for the County of Gallatin,
                The Honorable Thomas A. Olson, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

            James J. Screnar; Nash, Guenther,
            Zimmer & Screnar, Bozeman, Montana

        For Respondent:

            James D. McKenna; Lineberger,
            Walsh & McKenna, Bozeman, Montana


                            Submitted on Briefs:   June 1, 1993

                                    Decided:   October 5, 1993

Filed:

_____
Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from a division of marital property in a marital dissolution proceeding in the Eighteenth Judicial District, Gallatin County. We affirm.

We consider the following issues on appeal:

1. Did the District Court abuse its discretion in ordering the sale of the Kimm Farm if necessary and in assessing the division of marital property?

2. Did the District Court err in distributing to Marcia R. Kimm any interest in the stocks of Alice Kimm?

3. Did the District Court err in ordering Marcia R. Kimm to assume responsibility for one-half of the fraud damages assessed against Clarence J. Kimm, Sr., by his sisters in another action based upon the financial mishandling of Alice Kimm's estate?

Clarence J. Kimm, Sr. (Clarence) and Marcia R. Kimm (Marcia) have been married since December of 1963. At the time of their marriage, the couple resided in Grand Rapids, Michigan where Clarence worked as a teacher and Marcia as a homemaker. The couple have four children, all of whom have now reached the age of majority.

In 1972, the couple bought the "Kimm Farm" from Clarence's mother, Alice Kimm, and subsequently, in 1975, moved to Montana to operate the farm. Clarence proceeded to farm the land while Marcia worked part time at the Super Save Drug Store in Bozeman until 1978 after which she worked full time.

Marcia left the Montana farm in 1984 to reside elsewhere. The

couple divorced in February of 1987, but remarried four months later. Following the remarriage, Marcia made numerous trips to the farm to visit with Clarence and to do his housework and certain farmwork, but neither she nor the children ever again resided at the farm.

Marcia eventually obtained a full-time job with Gallatin County. She currently works full-time at this job and part time cleaning. Clarence continues to farm the ranch.

Marcia retained the responsibility for raising the four children, all of whom resided with her until their majority. Clarence's testimony at trial reveals that he has no relationship with his children and has not seen them for several years. Although he paid child support for the four months in which the couple were divorced, he has not contributed to their support since his remarriage to Marcia, despite her separate residence.

Marcia filed a petition for legal separation on July 31, 1991. On October 31, 1991, Clarence answered Marcia's petition by filing a response which requested the action be construed as one for dissolution. A trial was held on July 8, 1991, by the trial judge.

On August 14, 1992, the court issued its findings of facts and conclusions of law. The court determined that the marriage was irretrievably broken and divided the marital estate $353,447.78 to Marcia and $310,197.78 to Clarence. The court determined that because Clarence had not contributed to the support of his children, Marcia should get the larger share of the estate.

The estate mainly consists of the Kimm Farm which has been

appraised at a sales price of $673,000.00. The court provided that either party could buy the other party's share of the farm and keep the farm from being sold. If neither party tendered money for the other party's half of the farm, then the court ordered that the farm be sold. Clarence filed a notice of appeal from the court's order on October 7, 1992. Marcia filed a cross-appeal on October 28, 1992.

Pertinent to this action, but a separate cause, is a fraud action brought by Clarence's sisters following the death of Clarence's mother, Alice. See Flikkema v. Kimm (1992), 255 Mont. 34, 839 P.2d 1293. There, the court ordered Clarence to refund to his sisters $65,000 of the money he had assumed at the mother's death, as well as $30,000 in punitive damages and costs and fees for a total of approximately $104,000.

The record establishes that upon the death of Alice Kimm, his mother, Clarence assumed control over $100,000 which had been placed in joint tenancy with him. He commingled that $100,000 with other funds of his and of Marcia's.

The District Court here included the amount taken from Alice Kimm's estate in Clarence and Marcia's marital estate because it was impossibletotracethe $100,000 taken from Alice Kimm's estate within the couple's accounts. Because the marital estate had gained benefit from the inclusion of this money, the court assessed half of the judgment refund to Marcia for a total of $32,860.00. The court assessed the other half of the refund to Clarence plus the $30,000 punitive damages and the $8,470 in costs. Marcia

4

disputes the court's assessment to her of the $32,860 as she had nothing to do with the defrauding of Clarence's sisters. Clarence disputes the distribution to Marcia of certain stock purchased from funds of his mother's estate.

I.

Did the District Court abuse its discretion in ordering the sale of the Kimm Farm if necessary and in assessing the division of marital property?

Clarence contends that the court's division of the family farm in approximately equal shares to him and his ex-wife is unfair. Clarence claims to have worked the farm basically alone and that everyone involved with the farm agreed that it would not be sold. Further, Clarence argues that his money and efforts bought and maintained the farm.

Marcia claims that the lower court's division of the marital estate is equitable and is fully supported by the weight of evidence. Marcia contends that the assets at issue were acquired through the work and frugality of both parties during a 28 year marriage.

District courts are required to equitably apportion between the husband and wife all property and assets belonging to either or both, however and whenever acquired and no matter who holds title to the particular property. Section 40-4-202(1), MCA. District courts working in equity, must seek a fair distribution of marital property using reasonable judgement and relying on common sense. In Re Marriage of Danelson (1992), 253 Mont. 310, 833 P.2d 215. In order to accomplish this task, district courts are given great

5

discretion in dividing the marital estate. Danelson, 253 Mont. at 317, 833 P.2d at 220.

While acknowledging this discretion, we review a court's findings of fact and decide whether they are clearly erroneous and whether the court has correctly applied the law. Danelson, 253 Mont. at 317, 833 P.2d at 220.

We note first that the court entered 20 pages of findings and conclusions. The court's findings and conclusions are specific as to the guidelines provided in § 40-4-202, MCA. Of importance here, is the court's specific notation of the years in which Marcia contributed to the marital estate by homemaking and raising the couple's four children. The court also noted that while Clarence spent time with the children, that time was allegedly destructive. Further, the court noted that since Marcia left the farm to reside elsewhere with the children, Clarence has not contributed to the support of his children for more than the four months in which the couple was legally divorced in 1987.

Clarence argues that it was his efforts which resulted in the retention of the farm. However, the record supports the following conclusion of the District Court:

> The petitioner's [Marcia's] contributions during this 28-year marriage, both in her earnings and her services as a mother and homemaker were responsible for the family's ability to keep this farm.

Marcia not only worked at a regular job, but sometimes worked two jobs, raised the children, did the majority of Clarence's housekeeping, and worked on the farm as well as contributing financially to it.

6

The District Court divided the value of the farm between both parties. Partly, it did this in lieu of ordering support for Marcia. The court specifically ordered that the parties "shall have 120 days from the date hereof to acquire sufficient funds to cash out the other and their interest in the marital estate." The court specifically vacated the restraining order placed upon sale of farm assets so that the parties could raise the needed money to pay for the other's share of the farm. The value of $336,500.00 minus encumbrances on the property, was assessed to each party. Marcia filed a notice of intent to cash out Clarence's share. Clarence has filed no similar intent.

Clarence argues that In Re Marriage of Eklund (1989), 236 Mont. 77, 768 P.2d 340, controls the disposition of the farm. We disagree. In Eklund, the court gave a traceable $60,000 gift to the husband. The couple had only been married for four years. The husband's parents had loaned him $60,000 to buy a house. A promissory note was signed only by the husband. Every year, the parents forgave $20,000 of the debt.

The situation before us is very different. Here, the marriage was for 28 years. The farm was in the names of both parties and both parties contributed to the support and upkeep of the farm. No amount of money within the marital estate was traceable as a gift to either party. All assets in the marital estate were commingled. In addition, the District Court here noted that it distributed half of the farm instead of assessing maintenance against Clarence.

Such a distribution of property is reasonable under the facts

7

of this case. We have already determined that where a wife's non-monetary contributions as a homemaker facilitated the maintenance of the family business (here the farm), it enables the husband to devote more time and effort toward the business and necessitates the wife's sharing of the property. In Re Marriage of Taylor (1993), 50 St.Rep. 186. In its distribution of property, the District Court considered the home-making contribution by Marcia; Marcia's contribution to the maintenance of the property; the division of the property in lieu of a maintenance award to Marcia; the duration of the couple's marriage; each parties' health, age, station in life, occupation, amount and sources of income, vocational skills, employability, personal liabilities and potential for future acquisition of capital assets and income. These are all the elements to be considered under § 40-4-202, MCA.

We conclude that the record establishes that the District Court's findings in this area were not clearly erroneous. In addition, the record establishes that the District Court properly considered the law in distributing the marital estate.

Finally, in an attempt to compensate Marcia for her years of efforts in the marriage, the court provided for sale of the farm. The court made provision for Clarence or Marcia to provide funds within 120 days in order to purchase the other party's share of the farm. If neither party put forth funds to buy the other's half of the property, the farm was to sold and the money distributed according to the court's order. Sale of property so that the court can equitably distribute the marital estate is not an abuse of

discretion. In Re Marriage of Peetz (1992), 252 Mont. 448, 830 P.2d 543.

We hold that the court did not abuse its discretion here in ordering the sale of the Kimm Farm if necessary and in assessing the division of marital property.

II.

Did the District Court err in distributing to Marcia R. Kimm any interest in the stocks of Alice Kimm?

Clarence argues that the stocks devised to him by his mother should in no way be distributed to Marcia. Clarence contends that shares of stock in Borden Chemical Company, Frontier Directory Company, Diamond Shamrock, Ribi Intermountain, Citicorp, and Sterling Chemical were purchased after the death of his mother during the period of divorce. He also contends that shares in First Bank were added during the same period. Clarence contends Marcia has not contributed to the maintenance of these assets and is not entitled to any part of them.

Marcia contends that her steady income allowed the parties to accumulate and preserve these assets as well as other assets of the marital estate.

Whether inherited property is a marital asset remains a question to be treated on a case-by-case basis. In Re Marriage of Isaak (1993), 50 St.Rep. 219, 221. When property is inherited during the course of a marriage it is a marital asset. Isaak, 50 St.Rep. at 221. Here, Clarence's mother died 4 days after his divorce was final, but he was remarried four months later.

9

The key point is that the inheritance from Clarence's mother's estate was commingled with the remainder of the marital estate of the parties. The District Court stated:

[Clarence's] decision to commingle these funds in such a way as to make any tracing impossible, combined with the lack of the introduction of any supporting evidence, makes it impossible for the court to identify any assets to which this inheritance may have been transferred.

Clarence did not present any evidence which contradicted the foregoing conclusion of the District Court.

We hold the District Court did not err in distributing to Marcia an interest in the stocks acquired through use of the proceeds of the estate of Alice Kimm.

III.

Did the District Court err in ordering Marcia R. Kimm to assume responsibility for one-half of the fraud damages assessed against Clarence J. Kimm, Sr., by his sisters in another action based upon the financial mishandling of Alice Kimm's estate?

Marcia argues on cross appeal that the same stocks and bonds at issue in the aforementioned question were mishandled by Clarence, not her. According to Marcia, the fraud of which Clarence was found guilty had nothing to do with her and she should not have to repay Clarence's siblings from her half of the marital estate for Clarence's mishandling of his mother's estate.

The court in assessing Marcia half of the $65,000 judgment to repay Clarence's siblings, determined that the couple's entire marital estate had benefitted from the inclusion in it of the funds from Alice Kimm's estate. The $100,000 which Clarence took from his mother's estate had been commingled with his own marital estate

10

so that tracing was impossible. Therefore, the court reasoned that the entire marital estate should be burdened with the judgment, regardless of whether Marcia was involved in the prior fraud action.

We conclude that such reasoning is not an abuse of discretion. While the court assessed Marcia half of the amount to be given to Clarence's siblings, it did not assess her half of the marital estate with the court costs from the prior case or the $30,000 punitive damages.

We hold that the District Court did not err in ordering Marcia Kimm to assume responsibility for one-half of the fraud damages assessed against Clarence Kimm by his sisters in another action based upon Clarence's mishandling of Alice Kimm's estate.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

11

Justice Terry N. Trieweiler specially concurring.

I concur with the conclusions in the majority opinion under Issues I and III.

I specially concur with the result of the majority's conclusion under Issue II. However, I disagree in part with the reasons for that conclusion.

The majority cites its opinion in *In re Marriage of Isaak* (Mont. 1993), 848 P.2d 1014, 1017, 50 St. Rep. 219, 221, for the principle that property inherited during the course of marriage is a marital asset. That conclusion ignores the specific statutory requirement found at § 40-4-202(1), MCA, that pre-acquired property, gifted property, or inherited property be treated differently than other property acquired during the marriage. That statute specifically requires that when dividing inherited property or property acquired in exchange for inherited property, the court must consider the nonmonetary contributions of a homemaker and the extent to which those contributions have facilitated the maintenance of this property. The court must also consider whether the property division is an alternative to maintenance arrangements. If the Legislature intended such casual treatment of pre-acquired or inherited property, as is indicated in the majority opinion, then the various specific requirements set forth in § 40-4-202(1), MCA, would have been totally unnecessary.

This Court's decisions have, from time to time, reflected this statutory mandate, but not with any degree of predictability. See

12

*In re* **Marriage** *of Keedy* (1991), 249 Mont. 47, 813 **P.2d** 442 (Trieweiler, J., dissenting): **In** *re Marriage* **of Johnston** (1991), 249 Mont. 298, 815 **P.2d** 1145 (Trieweiler, J., dissenting); **Isaak,** 848 **P.2d** at 1014, (Trieweiler, J., dissenting). The effect of recent decisions, such **as Isaak,** is to simply amend the property distribution statute by removing the specific criteria provided therein and provide broad discretion for the distribution of all property. This approach is more consistent with this Court's result-oriented approach to the distribution of property owned by any party who is unfortunate enough to become involved in a dissolution of marriage. However, it is not a correct application of statutory law.

In spite of these concerns with language in the majority's opinion, I conclude that in this case the District Court correctly found that Clarence produced insufficient evidence to allow the District Court to trace the proceeds of his inheritance. The District Court found that:

> As a result of the death of respondent's mother in February of 1987, respondent claims to have obtained funds totalling approximately $105,000, the source of which were joint tenancy CDs and money market accounts standing in the name of respondent and his mother. Respondent apparently commingled those funds by purchasing stock or mutual funds under the parties' joint account, adding property to the parties' joint farm and otherwise. He presented no documentation or evidence which traced the specific use or location of this $105,000 alleged inheritance. The court notes that neither copies of the CDs, money market accounts, or a will were introduced as evidence. Respondent's decision to commingle these funds in such a way as to make any tracing impossible, combined with the lack of the introduction of any supporting evidence, makes it impossible for the court to identify any assets to which this inheritance may have been transferred. Accordingly,

13

no assets will be delineated herein as non-marital property.

Based on the inadequacy of Clarence's proof, the District Court was unable to trace his inherited property and was not in a position to more accurately satisfy the requirements of § 40-4-202(1), MCA.

For these reasons, I concur with the majority's decision to affirm the District Court, but not for the reasons stated in the majority opinion.

_____
Justice

14

October 5, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

James J. Screnar
Nash, Guenther, Zimmer & Screnar
P.O. Box 1330
Bozeman, MT 59771.1330

James D. McKenna
Lineberger, Walsh & McKenna
P.O. Box 6400
Bozeman, MT 59771-6400

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
   Deputy