No.   93-471

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN RE THE MARRIAGE OF

KENNETH G. CRAIB,

    Respondent and Appellant,

    and

DEBRA L. RHODES,

    Petitioner and Respondent.

APPEAL FROM:   District Court of the Eighth Judicial District,
               In and for the County of Cascade,
               The Honorable John M. McCarvel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    Susan J. Rebeck, Great Falls, Montana

    For Respondent:

    K. Dale Schwanke, Jardine, Stephenson, Blewett &
    Weaver, Great Falls, Montana

FILED

SEP 22 1994

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Submitted on Briefs:   May 11, 1994

Decided:   September 22, 1994

Justice Fred J. Weber delivered the Opinion of the Court.

Appellant Kenneth G. Craib (Kenneth) appeals an Order of the District Court of the Eighth Judicial District, Cascade County, which increased his child support obligation; awarded petitioner Debra L. Rhodes (Debra) a judgment for recovery of money she has paid for income taxes, interest and penalties; and awarded Debra attorney's fees and costs incurred in the action. The District Court's order covered motions by both parties to modify their original decree of dissolution of marriage entered on June 8, 1988 in Cascade County. We affirm.

The issues presented for review are:

I. Did the District Court abrogate the benefit that Kenneth received from his discharge in a federal bankruptcy proceeding?

II. Did the District Court abuse its discretion by increasing the amount of child support that Kenneth must pay?

III. Did the District Court abuse its discretion in granting judgment to Debra for 100 percent of the parties' income tax liability that she was required to pay following the dissolution of their marriage?

IV. Did the District Court abuse its discretion in refusing to admit certain evidence offered by Kenneth?

V. Did the District Court err in adopting Debra's findings of fact?

VI. Did the District Court err in awarding attorney's fees and costs to Debra?

The Property Settlement and Child Custody Agreement

2

(Agreement) signed by Debra and Kenneth in connection with the dissolution of their marriage in 1988 provided, among other things, that Kenneth would pay to Debra $200 per month for support of the parties' minor son; that Debra would receive the family home and would be responsible for the first mortgage on the home; that Kenneth would remain responsible for the second mortgage on the home, which had been taken out so that Kenneth could buy shop equipment for his business; and that the prevailing party in any subsequent action related to the Agreement would recover attorney's fees and costs incurred in that action. Unbeknownst to Debra, Kenneth had not filed the parties' previously prepared income tax returns for the years 1984, 1986 and 1987 at the time of the dissolution in 1988, and therefore, these liabilities were not included in the Agreement. The Agreement was prepared by Debra's attorney; Kenneth was not represented by counsel although he was encouraged to obtain separate counsel and represented in the Agreement that he had done so for purposes of reviewing the Agreement prior to signing it.

In June of 1990, Debra filed an affidavit of contempt alleging Kenneth was in arrears $1802 in child support and $900 on a marital debt he had assumed. Subsequently, at a hearing held in July of 1990, Kenneth volunteered to pay an additional $50 per month in support and a lump sum of $1,000. Although Kenneth began making payments of $250 per month, he paid only $650 of the lump sum promised.

In addition to being in arrears in his support payments,

3

Kenneth also failed to make payments on a loan from Beneficial Mortgage Co. to cover the second mortgage on the home. Debra was required to pay $730 to prevent foreclosure and has made payments on the Beneficial loan since Kenneth's default in early 1990. In December of 1990, Kenneth filed a Chapter 7 bankruptcy petition and has since been discharged and relieved of his liability on the second mortgage. Kenneth also failed to pay a Sears account and a loan he had taken out at Village Bank which was collateralized by Debra's car. Because the bank failed to perfect its security interest in the car, Debra has not been required to make payments on the loan from Village Bank.

After filing his bankruptcy petition in December of 1990, Kenneth filed the late tax returns with the Internal Revenue Service (IRS) and the Montana Department of Revenue (MDOR) for tax years 1984, 1986 and 1987. In February of 1991, Debra received notices from the IRS assessing penalty and interest in addition to the unpaid taxes from those years. Debra had signed the returns shortly after they were prepared and testified she was unaware of any unpaid tax liability at the time of the dissolution in 1988 and until she received the IRS notices. She subsequently received similar notices from MDOR for taxes, penalty and interest. Debra had taxes withheld from her income during those years; the unpaid taxes represented tax liability for Kenneth's income from self-employment in his auto body repair business.

Debra was forced to borrow money to pay the IRS and to make payment arrangements with MDOR to prevent her property from being

4

levied upon. Kenneth had scaled back his business, was not then employed and had petitioned for discharge in bankruptcy, making it impossible for the IRS or MDOR to collect from him at that time even though the taxes would not be discharged in his bankruptcy proceeding. Kenneth did not notify Debra that he was filing the returns after his bankruptcy petition. Debra testified that, had she known, she could have filed separately for those years and not owed any taxes.

Soon thereafter, in February of 1991, Kenneth contracted with the Great Falls Tribune to paint newspaper dispensing machines and to deliver newspapers. Kenneth received a Chapter 7 bankruptcy discharge on April 5, 1991. In July 1991, he also began full-time employment with Procraft, a Great Falls automobile body repair business. He earns in excess of $40,000 per year from these sources. He also has purchased a building for use in automobile body work; although he claimed he was not doing any body work for profit, he acknowledged that he had done so in the past on a "trade-out" basis and to assist in the payment of attorney fees in this and another proceeding. At the time of the trial in this proceeding, Kenneth had more than twenty vehicles located on this property.

In October of 1991, Kenneth remarried and has since supported his new wife and her two children. In February of 1992, Kenneth filed a petition to adopt one of his stepchildren on grounds her father was not supporting her. In that proceeding, Kenneth testified he was not current in the support of his own son because

5

of personal disagreements with Debra but that he was able to meet his support obligations for their son. His petition to adopt his second wife's daughter was later denied.

Just prior to filing his bankruptcy petition, Kenneth filed motions on November 28, 1990, to modify support and to be relieved of the liability for the Beneficial mortgage loan, the loan on Debra's automobile and the Sears account. Debra later moved for an increase in child support, for maintenance, for child support arrearages, for judgment for the amounts she had been forced to pay due to Kenneth's default of the Agreement, and for recovery of what she had paid to the IRS and MDOR.

The Agreement contains a provision by which each party represented to the other there were no debts incurred for which the other was not aware and could be held liable. In addition, it contains a provision providing that a non-defaulting party is entitled to recover payment such party is required to make because of default, together with interest, attorney's fees and costs, including those incurred because of default under the Agreement.

The District Court awarded increased child support retroactive to the date of the petition to modify support in the amount of $400 per month through the end of 1992 and increased support in the amount of $475 per month beginning in January of 1993. The Court denied Debra's request for maintenance but did award her a judgment for the amounts she had paid to the IRS and the MDOR and for delinquent child support. The court further awarded to Debra her attorney's fees and costs incurred in this action according to the

6

provision in the Agreement. The court also found Kenneth in contempt for his arrearages in child support.

## ISSUE I.

Did the District Court abrogate the benefit received by Kenneth from his discharge in a federal bankruptcy proceeding?

Kenneth has provided the Court with a lengthy argument on this first issue which essentially contends that the District Court substituted an increase in support from $200 per month to $400 and $475 per month for an award of maintenance, which was barred by the two-year limitation period set forth in § 40-4-208(2)(a), MCA, and for amounts which Debra has been forced to pay on the second mortgage obligation to Beneficial Mortgage Co. which was discharged in his bankruptcy proceeding. According to Kenneth, he is now being forced to pay maintenance and to pay for a debt that has been discharged in his bankruptcy proceeding by way of an unfounded increase in support for his son.

Debra moved for both increased support and an award of maintenance. The District Court denied her motion for maintenance and granted her motion to increase support. The amount of the child support award is addressed separately in Issue II below. The record does not support Kenneth's argument that the District Court substituted child support for the Beneficial loan which was discharged in Kenneth's bankruptcy proceeding.

Kenneth's argument that the increase in his support obligation is a substitute for maintenance or debt is similar to that presented and rejected by this Court in In re the Marriage of Jones (1990), 242 Mont. 119, 122-23, 788 P.2d 1351, 1353-54. In that

7

case, the husband argued that he was being penalized by the court for using proper bankruptcy procedures in discharging a $43,594 debt to the wife and that the court erred by increasing a maintenance award because the debt to the wife had been discharged in the husband's bankruptcy action. In Marriage of Jones, this Court concluded that substantial credible evidence supported the award of maintenance and that the maintenance was not a mere substitute for the husband's debt to the wife. Similarly, we conclude here that Kenneth is not being penalized for using procedures under the Bankruptcy Code to obtain a new start. His argument relating to the bankruptcy is simply not applicable to the circumstances of this appeal. The Bankruptcy Act at 11 U.S.C. § 523 does not allow a debtor to discharge obligations for child support or for income taxes, the obligations we are concerned with in this appeal. As discussed below, an increase in child support is justified at the discretion of the District Court upon a showing of a substantial and continuing change of circumstances. Section 40-4-208(2)(b)(i), MCA; Marriage of Jones, 788 P.2d at 1354.

We hold the District Court did not abrogate the benefit received by Kenneth from his discharge in the federal bankruptcy proceeding.

ISSUE II.

Did the District Court abuse its discretion by increasing the amount of child support that Kenneth must pay?

The standard of review this Court uses for child support awards is whether a district court has abused its discretion. In re the Marriage of Anderson (1993), 260 Mont. 246, 255, 859 P.2d

8

451, 457. Factors to consider in setting support orders are set forth in § 40-4-204(3)(a), MCA, which provides in pertinent part:

> Whenever a court issues or modifies an order concerning child support, the court shall determine the child support obligation by applying the standards in this section and the uniform child support guidelines adopted by the department of social and rehabilitation services pursuant to 40-5-209. . . .

The district court must use the child support guidelines in effect at the time it makes its decision. Marriage of Anderson, 859 P.2d at 256.

The court must initially determine, however, there has been "a showing of changed circumstances so substantial and continuing as to make the terms unconscionable." Section 40-4-208(2)(b)(i), MCA.

The District Court stated as follows:

> Debra has proven that there are substantial and continuing changes in circumstances such that the original award of $200 a month child support to her is unconscionable. The Agreement of the parties was made when Jason was 12 years of age. By the time Debra's Motion was filed he was nearly 14 and he is now 17. The funds that Debra would have envisioned would have been used from her earnings to provide for Jason have had to be redirected to pay and discharge the Beneficial loan Ken had agreed to pay. Within months after he filed his Motion he had taken on work at the Great Falls Tribune and at Procraft and earns substantial sums from both employments. He is acquiring a shop for $22,500.00 and has at least $5,000.00 equity in it. Any inability he had to not pay support for a time was brought upon himself. Debra is entitled to an increase in child support of $200 a month, for a total of $400.00 per month, retroactive to December, 1990, payable through the end of December, 1992. Commencing January, 1993, she is entitled to an increase of $275.00 a month for total support of $425.00 [sic] per month. She is also entitled to interest on the retroactive amounts.

Although the court's conclusion of law incorrectly states $425 per month, the judgment clearly orders a payment of $475 per month.

9

The court attached calculations to its decision which had been prepared by Debra that reflect Kenneth's ability to pay at least $288 a month child support in 1992 based on the parties' 1991 income, and at least $353 a month beginning in January of 1993 based on 1992 income figures. Kenneth's argument that the court used the guidelines in effect prior to July 30, 1992 for the award of $400 through the end of 1992 and the higher award of $475 per month after that date is inapplicable here; the difference in the award beginning in January of 1993 is supported by Kenneth's change in income in 1992 and his purchase of a shop building making it possible for him to earn self-employment income in addition to his wages and contract income.

Because Debra's guideline calculations were attached to the court's order, Kenneth translates the amount of support awarded over the calculated amounts as maintenance or dischargeable debt. Debra's calculations, however, are the only calculations which include the income attributable to Kenneth as well as the appropriate tax liability. The District Court made no indication whatsoever that the increase in support was a substitute for maintenance or dischargeable debt.

The child support guidelines are termed "guidelines" and as such are not set in stone. Moreover, the District Court had the discretion to consider other matters affecting the parties as well as their income. Child support awards necessarily require a district court to consider numerous factors in addition to the amount of income of each parent.

10

The courts can also impute income to a party based on the particular facts of a case. In this case, there was substantial evidence presented which indicated that Kenneth had not reported all income from self-employment during the years the parties were married. Debra did not include imputed income in calculating her proposed support payment under the guidelines. However, evidence was introduced that Kenneth had more than twenty vehicles--many belonging to others--at his shop at the time of the trial in this matter. The District Court noted:

> THE COURT: There is another old aphorism that says -- Patrick Henry said, "I know no better way of judging the future than by the past." But you have got to have proof.
>
> . . .
>
> . . . She suspects he did. And he probably did. Even now he has got 20 cars over there on the lots, and he probably is remodeling them, and refurbishing, and reselling them, and making a lot more profit than would appear.

The District Court's findings justify an award of support in excess of the amount calculated under the guidelines. There is evidence of an increased need in support as Jason, although still a minor, was attending college at the time of the trial.

Kenneth also contends that the District Court erred by including income from Kenneth's contracts with the Great Falls Tribune in computing support. The 1992 guidelines state as follows:

> If a person with a subsequent family has income from overtime or a second job, that income is presumed to be for the use of the subsequent family, and is not included in gross income for the purposes of determining support for a prior family. The presumption may be rebutted upon

11

a showing that the additional income is discretionary. 46.30.1508(3), ARM. Evidence introduced at trial indicated that Kenneth did not take on extra jobs after acquiring his second family and that he was working all these jobs prior to his marriage to his second wife. He provided no testimony that the income from the second and third jobs was necessary for the support of his second family although he testified that his stepson was handling the newspaper delivery job and garnering the income from that contract. Kenneth did not produce documentation to this effect and, in fact, his tax returns show that he receives the income from this contract with the Tribune.

Kenneth further testified that this income would be used for support of his stepson in any case. We note that Kenneth has no obligation to support his stepchildren; however, he has an obligation to support his son Jason from his marriage to Debra. See In re the Marriage of Carlson (1984), 214 Mont. 209, 218, 693 P.2d 496, 501. Although Kenneth attempted to adopt one of his stepchildren based on her father's nonpayment of support, his petition for adoption was denied. We conclude that any money Kenneth uses to support his stepchildren may be classed as discretionary income for purposes of this case.

Contrary to Kenneth's contentions, the 1992 guidelines allow the court to include income from his second and third jobs when computing support. The inclusion of this income is supported by the findings of the District Court. The court enumerated extensive findings which include the following:

12

[Finding No. IV.]     Although Ken testified dissolution of the marriage had a negative effect on him emotionally, which affected his business, his self employment income in 1988 and 1989 was significantly greater than it had been in 1987 or before. . . .

[Finding No. VI.]     During much of the time Ken was reporting low amounts of income from his self-employment in the early to mid-1980's the parties were refurbishing the family residence.   Ken testified he did work for individuals who in turn worked on the home on a trade-out basis.   The value of the work performed on the home was not reflected in the parties' income.   Ken also had trade-out arrangements with others.   It is not possible to determine the value of this trade-out work because there are no records reflecting what the trade-outs may have been.   However, he testified he did $1,000 of trade-out work for fees Attorney Brett Asselstine charged him when Asselstine represented Ken in a 1992 adoption proceeding.   He also testified he had done $3,000 to $4,000 of work for his attorney in this proceeding to pay a portion of her fees.

[Finding No. XVIII.]     . . . Based on [Ken's] experience and expertise, and the availability of jobs, he should have been able to find employment in 1989 or 1990 as an auto body repairman within three months after starting to look for such work, and would have earned no less than $11.50 an hour.

[Finding No. XXIII.]     . . . The form 1099 issued by the Tribune was issued to Ken and the contract for the route is in Ken's name.   Ken testified he was uncertain as to what he was going to do with respect to the route after Nathan graduated from school in 1994.   Even if Nathan was receiving some of the income from this contract work Ken testified it was going to pay sums that otherwise would have had to have been provided for Nathan.

[Finding No. XXV.]   Ken remarried in October, 1991.   At that time he was substantially delinquent in his child support obligation for Jason.   He also knew his present wife, Elisa, could not work, that she had two children that would be living with them, that she owed various debts, and that her children weren't receiving child support.

[Finding No. XXXIII.]     Jason has just turned age 17. He is 5 years older than when the marriage was dissolved and it costs more to care for him now than it did when the marriage was dissolved.   This together with the

additional sums Debra has had to pay out to secure the home for them increased her need for child support beyond what the need was when the marriage was dissolved.

In the Conclusions of Law, the District Court stated:

[Conclusion No. I.] . . . The Court believes Ken has not and does not report all the income he earns from self-employment, but even so his 1988 and 1989 income tax returns reflect that he was earning more after the marriage was dissolved than before. Even if his business commenced to fail he could have secured work as an auto body repairman in Great Falls for no less than $11.50 an hour, in a short time, which is imputed to him, and in fact, he had obtained a job for $11.50 an hour at Bison Motors, which he apparently did not take. By July 1, 1991, he was working at Procraft for $13.50 an hour. He also testified in another proceeding that he was able to pay the support for Jason, but didn't do so because of a dispute with Debra. If anything his ability to pay child support was only temporarily changed and a temporary change in circumstances is not sufficient to justify modification of child support. Section 40-4-208, M.C.A.; In Re Marriage of Forsman, 229 Mont. 411, 747 P.2d 861.

The record supports Debra's increased need for support based on her having to pay debts assigned to Kenneth from as far back as early 1990. In 1991, Debra paid the past due amounts to the IRS and MDOR and is obligated to repay her aunt for money she borrowed to pay some of the taxes. Further, Debra testified she had borrowed $3,000 against her Tribune retirement plan to use for living expenses for herself and Jason. Clearly Debra has used and continues to use money for Kenneth's debts and for tax liabilities which otherwise would have gone to the support of Jason. Moreover, had the taxes been filed on time as Debra thought they had been, the penalties and interest--substantial sums--would not have been assessed. According to the record, this was entirely Kenneth's fault. The support increase is retroactive to December of 1990. Although the District Court noted that the support obligation for

14

the year 1991 should be based on the child support guidelines that were in effect at that time, there is no evidence that the amount awarded is actually calculated on previous guidelines. In fact, the District Court proceeded on the premise that the amount of the guidelines was a discretionary recommendation which he did not have to follow. On this basis, we conclude the amount awarded for support can be justified under either set of guidelines.

Kenneth also contends that the court erred by miscalculating his equity in his shop property. The record indicates that Kenneth paid a $2,500 down payment on this property and another $2,500 balloon payment and that he is paying in excess of $250 per month on this property. The second $2,500 payment was made with money borrowed from his employer and some of that was not repaid at the time of trial. The entire $5,000 in equity was included as income-producing property in the calculations made by Debra which were attached to the court's order. The total annual income attributed to Kenneth from the $2,500 which was borrowed from his employer is approximately $175. According to the facts of this case, we conclude this amount is insignificant for a determination of support.

Finally, Kenneth argues that Debra's retirement accounts should have been included as income-producing property in determining the amount of support under the guidelines. Debra has approximately $40,000 in two retirement accounts. One of these accounts is through her employer, the Great Falls Tribune; the other is with Buttreys, a previous employer. She has taken out a

loan for $3,000 against the Tribune account and is making payments on that loan. We conclude these accounts are not properly included as income-producing property.

Kenneth's argument that these accounts should be included as income-producing property based on our recent decision in In re the Marriage of Hunt (1994), 870 P.2d 720, 729-30, 51 St.Rep. 209, 216, is misguided. In Marriage of Hunt, the husband argued that the wife's contributions to her unqualified retirement account could not be deducted from income; here Kenneth contends that all contributions to date should be included as income-producing property. He has not made the argument made in Marriage of Hunt that Debra has contributions which should be included in gross income.

Moreover, Kenneth did not argue in the trial court that these were not qualified retirement accounts. Debra had no notice that he would argue this on appeal and thus did not submit evidence on this issue. An issue will not be reviewed if it is raised for the first time on appeal. Erler v. Erler (1993), 261 Mont. 65, 73, 862 P.2d 12, 18. Therefore, we conclude that Kenneth is precluded from making this argument on appeal to this Court.

Section 40-4-204(3)(a), MCA, provides that the amount of support awarded using the applicable standards and guidelines is presumed to be adequate and reasonable unless the court finds by clear and convincing evidence that the application of them is unjust to the child or to any of the parties or is inappropriate in the case. We hold the District Court properly exercised its

16

discretion in increasing the amount of child support that Kenneth must pay for the support of Jason.

## ISSUE III.

Did the District Court abuse its discretion in granting judgment to Debra for 100 percent of the parties' income tax liability she was required to pay subsequent to the dissolution of their marriage?

The tax returns for tax years 1984, 1986 and 1987 were never filed by Kenneth during the parties' marriage, apparently because there was money due for those periods. The return for 1985 was timely filed and a refund received by the parties during the marriage. Kenneth had control of the returns after he received them from the parties' accountant and after Debra signed them. The relevant evidence in the record supports the District Court's finding that Debra was unaware at the time of the dissolution in 1988 that the tax returns had not been filed and taxes had not been paid.

Debra testified that she would have filed separate returns for those years had she known they were not filed. This testimony is supported by further evidence that her employer withheld sufficient tax from her salary to cover her separate tax liability for the three years. Moreover, Debra did not include unpaid tax liabilities as part of the Agreement between the parties.

Further, Kenneth did not notify Debra that he was going to file the returns late prior to filing them in January of 1991. Debra's first notice came when she received the first assessment notices from the IRS in late February of 1991. If Kenneth had notified Debra or if he had filed separately, Debra would have had

17

the option of filing separate returns for those years, and since she had had enough withheld from her salary to cover her separate tax obligations, she would not have owed any tax personally.

The Agreement contains the following clause:

> Wife represents and warrants to Husband she has not incurred any debts or made an (sic) contracts of which Husband may be unaware and for which Husband or his estate may be liable, and Wife will not incur any such debts or make any such contracts. If Wife violates this provision and as a result thereof Husband is obliged to make a payment or payments to others, he shall have the right to recover the same from Wife together with interest at the highest rate allowed by law, and, if reasonably necessary, he shall also be entitled to any costs of collection, including reasonable attorney's fees. Husband makes the same representations and warranties to Wife as Wife has hereinabove made to Husband and assumes the same obligations in the event Wife must make a payment or payments to others by reason of debts assumed by Husband hereunder.

It also includes the following "Hold Harmless Agreement":

> Wife and Husband agree each with the other to defend, indemnify and save each other harmless of, from and against any and all loss, damage, costs and expenses, including reasonable attorney's fees, which either of them may hereafter suffer, incur, sustain or be subjected to as a result of any and all defaults in connection with this agreement and payment of any of the debts and obligations assumed by them.

Although the unpaid tax liabilities to the IRS and MDOR should have been included in the Agreement, they were not included based on Kenneth's silence. Because Kenneth withheld this information, the debt became larger. When he finally filed the returns, he had temporarily insulated himself from having to pay the debts. Debra, on the other hand, was in a position whereby the IRS and MDOR could collect the taxes, penalties and interest from her. In all likelihood, Kenneth was aware of this and his actions may have been

18

intentional, judging from the acrimony between the parties. When the tax debts had been paid by Debra, Kenneth began his employment with Procraft.

Clearly, the Agreement covers a situation such as this where a debt is not included as part of a property settlement agreement despite the knowledge and representation of one of the parties. We conclude the Agreement provides for indemnification by the defaulting party and speaks for itself.

District courts working in equity are given great discretion in dividing the marital estate in order to achieve a fair distribution of marital property using reasonable judgment and relying on common sense. In re the Marriage of Kimm (1993), 260 Mont. 479, 483, 861 P.2d 165, 168. Allocating the entire tax debt to Kenneth is reasonable under the facts of this case. We conclude the District Court's findings which support the allocation of the entire tax liability to Kenneth are not clearly erroneous and the court did not abuse its discretion in determining that Kenneth should be responsible for the entire tax liability for the years 1984, 1986 and 1987 and in granting a judgment in favor of Debra for the joint taxes, penalty and interest she has paid subsequent to the dissolution.

We hold the District Court did not err or abuse its discretion in granting judgment to Debra for all income tax liability she was required to pay subsequent to the dissolution of the parties' marriage.

ISSUE IV.

Did the District Court abuse its discretion in refusing to admit certain evidence offered by Kenneth?

Kenneth contends that certain information should have been admitted by the District Court to demonstrate that the Agreement unfairly divided the marital property. That Agreement was signed by the parties in May of 1988 prior to the dissolution of their marriage in June of 1988. Kenneth's reason for trying to introduce this information is as follows:

> MS. REBECK: If I might, there is an issue that is missing from the agreement, and that is the income tax responsibility. And it's our position when something is missing from that agreement, this Court has to construe whose responsibility that is.
>
> And to do that, the Court needs to understand the relative positions of the parties at the time the agreement was entered into, and who got what so you can construe the responsibility for the income tax.

The court denied admission of any evidence pertaining to the circumstances at the time of the dissolution, repeatedly stating that "the agreement speaks for itself."

The Agreement contains no reference to unfiled tax returns or tax liability. Debra's attorney prepared the Agreement which Kenneth signed. Kenneth represented that he had contacted an attorney prior to signing the Agreement and that it covered all assets and liabilities of the parties at that time. For reasons unknown, he knowingly withheld information about liabilities which should have been included as part of that agreement.

Rulings on the admissibility of evidence are within the sound discretion of the trial court and will not be overturned on appeal

20

absent an abuse of discretion. Zimmerman v. Robertson (1993), 259 Mont. 105, 110, 854 P.2d 338, 341. Evidence which is not relevant is inadmissible. Rule 402, M.R.Evid. We conclude the District Court properly refused to admit evidence in this proceeding about the circumstances at the time of the dissolution. We further conclude that the court's statement that the agreement speaks for itself is a determination that the evidence sought to be admitted was not relevant to this proceeding.

We hold the District Court properly exercised its discretion in refusing to accept evidence pertaining to circumstances at the time of the dissolution.

### ISSUE V.

Did the District Court err in adopting Debra's proposed findings of fact verbatim?

Kenneth contends that the findings of fact signed by the District court are a "verbatim replication" of the findings proposed by Debra. The District Court, in fact, did adopt Debra's proposed findings with very little change. We note also that the court stated during the trial:

> But it appears to me there isn't much dispute about the facts of this case. Most of those facts can be stipulated to. That's why I don't know why we are having all this testimony.

This Court has repeatedly stated that a trial court's findings of fact, although verbatim from or similar to those proposed by a party, will be affirmed if they are supported by substantial credible evidence in the record. In re the Marriage of Bolt (1993), 259 Mont. 54, 57-58, 854 P.2d 322, 324. Kenneth does not

21

point to findings which are inaccurate; rather, he claims there are numerous factual findings which can be made from the evidence which were not listed in the District Court's order. We conclude the District Court's findings are supported by substantial credible evidence in the record.

We hold the District Court did not err by adopting Debra's proposed findings of fact almost verbatim.

ISSUE VI.

Did the District Court err in awarding attorney's fees and costs to Debra?

Kenneth also contends that the District Court erred by awarding attorney's fees and costs to Debra because there was no clear winner in the case and also because there is no evidence to show that Debra is without resources to pay her counsel. Kenneth's arguments on this issue have no merit. The award in this case was not based on § 40-4-110, MCA, as Kenneth contends; rather, the Agreement clearly provides for an award of attorney's fees and costs under the circumstances present here. It provides:

> Wife and Husband agree each with the other to defend, indemnify and save each other harmless of, from and against any and all loss, damage, costs and expenses, including reasonable attorney's fees, which either of them may hereafter suffer, incur, sustain or be subjected to as a result of any and all defaults in connection with this agreement and payment of any of the debts and obligations assumed by them.

Clearly this provides for attorney's fees and costs to be awarded to Debra in connection with Kenneth's conduct and misconduct subsequent to the dissolution of marriage. The District Court based the award of attorney's fees and costs on the contract

22

between the parties including the above-quoted provision and the provision by which Kenneth represented that there were no other debts of the marriage.

We hold the District Court correctly awarded attorney's fees and costs to Debra.

Affirmed.

_____
Justice

We Concur:

_____
_____
_____
Justices

23

Justice James C. Nelson specially concurs and dissents.

I concur with the Court's opinion on all issues except Issue 2. On that issue I would remand and require application of the 1992 guidelines, and if the District Court awards support in excess of those guidelines, I would require proper justification in the court's findings and conclusions. In that regard I would also hold that the District Court (a) was correct in including Ken's earned income from his second and third jobs. Section 46.30.1508(3), ARM; (b) was correct in excluding Debra's retirement fund, but in error in not including her monthly contribution to that fund in her gross income, unless there is evidence that Debra is contributing to an IRS-approved plan. Section 46.30.1516(1), ARM; and (c) erred in including Ken's equity in his shop building since it was a performing asset. Section 46.30.1514, ARM.

_____
Justice

24

September 22, 1994

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Susan J. Rebeck, Esq.
Susan J. Rebeck, P.C.
P.O. Box 2720
Great Falls, MT 59403-2720

K. Dale Schwanke, Esq.
Jardine, Stephenson, Blewett & Weaver, P.C.
P.O. Box 2269
Great Falls, MT 59403-2269

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy