No. 98-581

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 182N

IN RE THE MARRIAGE OF

LINDA L. NOBLE,

Petitioner and Respondent,

and

MICHAEL C. NOBLE,

Respondent and Appellant.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Michael C. Noble, *pro se*, Helena, Montana

For Respondent:

John L. Hollow, Attorney at Law, Helena Montana

Submitted on Briefs: April 1, 1999

Decided: July 27, 1999

Filed:

_____

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

**¶1. Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.**

**¶2. Michael C. Noble, appearing *pro se*, appeals from an order of the First Judicial District Court, Lewis and Clark County, redetermining child support for his three minor children. We reverse and remand.**

**¶3. The sole issue on appeal is whether the District Court abused its discretion in recalculating child support.**

**¶4. Michael and Linda Noble married in 1975 and subsequently had four children. Their marriage was dissolved in April of 1992, at which time all of the children were still minors. Michael and Linda had entered into a written agreement concerning property settlement, child custody and child support which the District Court determined was not unconscionable and incorporated into the decree of dissolution. Under the agreement and decree, Linda received the family home and assumed the outstanding $45,000 mortgage. Michael was required to pay child support in the monthly amount of $750, and was entitled to claim all four children as dependents on his state and federal tax returns until such time as child support was redetermined. Child support was to be recalculated upon Linda obtaining employment. In addition, Michael was to pay Linda monthly maintenance in the amount of $100 until June 1, 1993, and Linda retained responsibility for her student loans.**

**¶5. In September of 1993, Michael moved for modification of child support and visitation. His motion was based on alleged changes in the amount of time the children were residing with Michael and Linda's employment status. On January 3, 1994, the District Court issued its order modifying visitation and, based on the parties' more equal sharing of custody and their respective incomes, reducing Michael's child support to $346 per month. Michael moved to amend the order and**

the court denied his motion.

¶6. In March of 1998, Michael requested the District Court to recalculate his child support obligation to take into account that one of the children was soon to reach age 18 and to reflect his payment of the children's monthly $55 health insurance premiums. The court issued an order which reduced Michael's child support to $259 per month and granted Linda 20 days to respond. Linda objected and requested the court to order the parties to exchange and submit complete child support financial affidavits, together with 2 months' pay stubs and their 1997 filed and signed tax returns. The court did so.

¶7. Linda's submittal stated each party's self-support reserve as $658 and requested a variance from the guidelines relating to her child support obligation in the amount of $299--which represented one-half of her monthly college loan payments--based on financial hardship. With the requested variance from the guidelines, Linda calculated Michael's total monthly child support obligation--based on roughly equal shared custody of the children--at $327 per month. Michael represented each party's self-support reserve as $671 and requested no variances. He calculated his total monthly child support obligation as either $169 or $197, and suggested that the "fair" amount would be $197.

¶8. The District Court entered its Order of Child Support on August 11, 1998. In pertinent part, the court stated that it had recalculated child support under the guidelines and that Michael's total monthly child support was $309 per month, "based on Michael's gross annual income of $42,370, and Linda's gross annual income of $24,301." The calculation credited Michael for paying the children's health insurance premiums. In addition, having begun with a determination that each of the parties' self-support reserve was $671, the District Court increased Linda's self-support reserve by $599--to $1,270 per month--"[t]o reflect [her] extraordinary expense of repaying her college loans[.]" The calculations also were based on the parties claiming two children, and then one child, as dependents for tax purposes in alternating years. The District Court expressly stated that "[n]o variances apply," and its worksheets reflect that the court found no variances were appropriate. Thus, the court expressly denied Linda's request for a $299 monthly variance, but increased her self-support reserve by $599 per month. Notice of entry of the order was filed and served, and Michael appeals.

**¶9. Did the District Court abuse its discretion in recalculating child support?**

**¶10. As mentioned above, the District Court increased Linda's self-support reserve by $599 per month--the amount she pays monthly for her college loans--in recalculating child support, and also stated that "[n]o variances [from the Uniform Child Support Guidelines] apply." Both parties assert that the increase in Linda's self-support reserve constitutes a "variance" from the applicable guidelines. According to Linda, the "variance" was appropriate and the District Court made sufficient findings to explain its deviation from the guidelines. Michael argues that the court merely shifted responsibility for Linda's college loans--which was hers alone under the decree of dissolution--to him by increasing her self-support reserve and, ultimately, his child support obligation. In these regards, Michael urges that the District Court erred.**

**¶11. In awarding or modifying child support, a district court must follow § 40-4-204 (3)(a), MCA, which requires it to**

determine the child support obligation by applying the standards in this section and the uniform child support guidelines . . . . unless the court finds by clear and convincing evidence that the application of the standards and guidelines is unjust to the child or to any of the parties or that it is inappropriate in that particular case.

The court must use the guidelines in effect at the time of its decision. In re Marriage of Craib (1994), 266 Mont. 483, 491, 880 P.2d 1379, 1384 (citation omitted).

**¶12. An award based on the guidelines is presumed to be reasonable and adequate, but a party may rebut that presumption by presenting evidence that a guidelines-based award would not meet the child's needs. Section 40-4-204(3)(a), MCA; In re Marriage of Schnell (1995), 273 Mont. 466, 469, 905 P.2d 144, 146 (citing Rule 46.30.1507(1), ARM). If the court finds that the guideline amount is unjust or inappropriate, "it shall state its reasons for that finding. . . ." Section 40-4-204(3)(b), MCA. Similarly, Rule 46.30.1507(3), ARM, requires a district court to make specific written findings which demonstrate its reasons for any deviation from the guidelines. *See also Marriage of Schnell*, 273 Mont. at 469, 905 P.2d at 146. Finally, "[f]indings that rebut and vary the guideline amount must include a statement of the amount of**

support that would have ordinarily been ordered under the guidelines." Section 40-4-204(3)(b), MCA.

¶13. We review a district court's child support award or modification to determine whether the court abused its discretion. *See Marriage of Schnell*, 273 Mont. at 469, 905 P.2d at 146 (citations omitted). On the record before us, we conclude that the District Court abused its discretion.

¶14. As noted above, Linda requested a $299 monthly variance from application of the guidelines because of her financial condition relating to her responsibility--under the decree of dissolution--for her college loans. Permissible variances from the guidelines are listed on the Montana Child Support Guidelines Worksheets completed by parties to child support proceedings and by district courts in calculating child support; those variances include the "financial condition of parent" variance requested by Linda.

¶15. Here, however, the District Court expressly determined that no variances applied. That determination is buttressed by the District Court's failure to check any of the itemized variances listed on its worksheets calculating child support. Thus, we accept the District Court's determination that no variances applied.

¶16. Having rejected the applicability of any variances, however, the District Court increased Linda's self-support reserve by $599 per month for the college loan payments for which she bore responsibility under the dissolution decree. The self-support reserve item reduces a parent's net monthly income dollar-for-dollar in determining her or his net available resources for child support; the net available income of each parent is then utilized to determine each parent's percentage share of the combined resources available for child support and, ultimately, the child support obligation of each parent.

¶17. In this case, the effect of Linda's increased self-support reserve was to lower the net available resources of the parties available for child support and render Linda responsible for only 14% of that support. Without the increase in Linda's self-support reserve, it appears that Linda would have been responsible for approximately 35% of a higher combined available resource for child support.

¶18. We perceive several problems with the District Court's increase in Linda's self-

support reserve. First, the "self support reserve" is a formulaic determination of "the minimum amount of income which a parent must retain to meet the minimum subsistence needs of his or her household for food, clothing, shelter, medical care and job-required transportation[;]" it is "presume[d] . . . to be the amount which corresponds to the parent's household size in the federal poverty index." *See* Rule 46.30.1521, ARM. The record reflects that Linda's and Michael's self-support reserve, determined pursuant to Rule 46.30.1521, ARM, was $671. Nothing in the Rule expressly permits a deviation from the formulaic determination of the self-support reserve and neither the District Court nor either party has advanced authority in support of such a deviation. On the other hand, the Rule's use of the word "presume" may be indicative of the court's ability to deviate from the formulaic determination of a parent's self-support reserve. Again, however, no authority before us supports such an ability.

¶19. This discussion of the self-support reserve leads directly to our second problem with the District Court's increase in Linda's self-support reserve. While not technically a "variance," the increase in Linda's self-support reserve clearly was a deviation from the guidelines, even assuming *arguendo* that this particular deviation is permissible. As discussed above, if a court finds by clear and convincing evidence that application of the guidelines is unjust or inappropriate in a particular case, the court must "state its reasons for that finding." Section 40-4-204(3)(b), MCA. Specific written findings demonstrating the reasons for any deviation are required. Rule 46.30.1507(3), ARM; *Marriage of Schnell*, 273 Mont. at 469, 905 P.2d at 146. Here, the District Court's only stated reason for deviating from the guidelines by increasing Linda's self-support reserve was her "extraordinary expense of repaying her college loans[.]" That statement is insufficient to meet the requirements of § 40-4-204(3)(b), MCA, and Rule 46.30.1507(3), ARM, especially since Linda did not request the deviation, the "extraordinary expense" existed at the time of the dissolution decree which placed responsibility for those loans on Linda, and the court expressly determined that no variances applied. Furthermore, the deviation from the guidelines was not accompanied by "a statement of the amount of support that would have ordinarily been ordered under the guidelines[,]" as required by § 40-4-204(3)(b), MCA.

¶20. For these reasons, we conclude that the District Court abused its discretion in recalculating child support in this case.

**¶21. Reversed and remanded for reconsideration and entry of findings to support any variance or deviation from the guidelines.**

/S/ KARLA M. GRAY

We concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER